Flynn vs. The State.

FLYNN, Plaintiff in error, vs. THE STATE, Defendant in error.

*June 14 — September 28, 1897.*

*Criminal law and practice: Murder: Information: Waiver of irregularity: Immaterial error: Evidence: Premeditated design.*

1. Under sec. 4660, R. S., an information charging that the accused "did feloniously, wilfully, and of malice aforethought, kill and murder one" S., is sufficient to sustain a conviction of murder in the first degree.

2. An instruction authorizing the jury, under specified circumstances, to find the defendant guilty of murder in the first degree, is not a material error on appeal from a conviction of murder in the second degree.

3. In a prosecution for murder, the announcement of counsel for the defendant that "we accept the jury," constitutes a waiver of any irregularity in the selection of the jurors.

4. Evidence showing, among other things, that the defendant had a grievance against the deceased and had made threats; that the parties met in a saloon, when an altercation ensued, during which each called the other a liar; that the defendant drew his revolver and commenced shooting at the deceased; that the deceased fled; and that the defendant pursued and continued shooting after the deceased, inflicting fatal wounds, is *held* not to establish a premeditated design to effect the death of the deceased so conclusively as to render erroneous a verdict of murder in the second degree. *Clifford v. State,* 58 Wis. 477, distinguished and limited.

ERROR to review a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The plaintiff in error was convicted of the crime of murder in the second degree, on an information which charged that he "did feloniously, wilfully, and of malice aforethought, kill and murder one William Sullivan." When it came to the impaneling of the jury to try the cause, it appeared that several of the persons whose names were on the general panel for the term had been summoned on a special venire, which had been issued in blank as to the names of the persons to be summoned, and filled by the sheriff with

the names of persons selected by him, from the county at large. The plaintiff in error objected to having the names of these persons put into the box among the names to be drawn from for jurors in the case. The objection was put upon the ground that these persons had not been selected according to law. The contention was that jurors to fill a regular panel could be selected only from the names on the list returned as petit jurors, by the supervisors, as provided by ch. 126, Laws of 1895. His objection was overruled, and the names were put into the box. It was then found that it still lacked of a full panel of thirty-six jurors. The plaintiff in error protested that he could be required to proceed only with a full panel. So another special venire in the same form was issued, and the panel was filled. The plaintiff in error made the same objection to these jurors, that they had not been legally selected. He said there was no objection to any of the men themselves; they were unexceptionable; but the objection was to the manner of their selection only. After the jurors of the regular panel, so filled, had been exhausted by challenges and excuses and the trial jury not yet secured, the court issued another special venire, in the same form, for fifty additional jurors. The plaintiff in error made the same objection to the persons which this venire brought, which was in like manner overruled, and the work of impaneling the jury proceeded.

While the plaintiff in error had yet remaining two peremptory challenges, his counsel announced to the court that he would waive his further challenges, and " will accept the jury." Thereupon the court inquired if any juror of foreign birth had not obtained " his full citizen papers." One who had come to this country when a child was doubtful if his father had secured his full papers before the juror had become of age. He was excused, against the protest of the plaintiff in error. Another juror was called, and, after examination on his *voir dire*, accepted. The counsel of plaint-

iff in error announced, "It is satisfactory to us." The jury was then sworn, and the trial proceeded. The plaintiff in error was convicted of murder in the second degree, and sentenced to a term of fourteen years in the state prison. To reverse that conviction, he brings writ of error.

For the plaintiff in error there was a brief by *Gleason & Sleight*, and oral argument by *Richard Sleight*.

*The Attorney General*, for the defendant in error. [No brief on file.]

NEWMAN, J. The plaintiff in error urges three several grounds of error on which he claims a reversal of the conviction: (1) "The court erred in trying the defendant for murder in the first degree, when the information filed, and upon which the defendant was arraigned, charged the offense of murder in the second degree only;" (2) "the court erred in refusing to impanel the jury according to law;" and (3) "the verdict is contrary to the evidence."

1. The first ground of error is not happily stated. It is of little interest now upon what theory the plaintiff in error was tried, if his conviction of murder in the second degree was produced fairly and without the intervention of error. The purpose of the trial was to ascertain if the plaintiff in error was guilty of the homicide, and to determine the degree of his guilt. It involved the investigation of all the circumstances of the crime. The degree of guilt could be known only as the result of the trial. The form of the trial must be the same, whatever the degree of guilt. What was intended by this specification of error is, probably, only that the court erred in that part of its charge wherein the jury were advised to find the defendant guilty of murder in the first degree if they should find from the evidence that the homicide was committed from premeditated design to effect the death of the person killed. This, of course, is error unless the information did charge murder in the first degree;

for no conviction of an offense of which the defendant was not charged in the information could be sustained. But it would be a harmless error, because it evidently had no effect on the verdict.

That an information in this form does charge the offense of murder in the first degree is not an open question in this state, however it might be at common law and in the absence of a statute regulating the matter of criminal pleadings. The statute (R. S. sec. 4660) declares that an information in the form used shall be sufficient to charge the crime of murder. It has been held by this court, in repeated decisions, that it is competent under an information in that form to convict of murder in the first degree. *Rowan v. State,* 30 Wis. 129; *Hogan v. State,* 30 Wis. 428; *State ex rel. Welch v. Sloan,* 65 Wis. 647; *Allen v. State,* 85 Wis. 22. It is a mere matter of criminal pleading, within the undoubted competency of the legislature to direct. The defendant cannot be misled by it as to the nature of the accusation against him. He is assumed to know the statute and the decisions,— to know the law. If he does not in fact know it, his attorney will find it out and inform him. That is part of his function.

2. It is not important to inquire or determine whether the jurors were properly selected, and duly produced in court by proper process; for the defendant withdrew his objections, and waived any irregularity which may have existed in that respect. It seems to have been thought by both counsel and court that such errors could not be waived. It must have been on this theory that the court excused a juror, over the defendant's objection, on motion of the district attorney, on the ground that it was doubtful if he was unnaturalized, and for that reason incompetent. But this is an entire misapprehension of the defendant's right in that regard. He can waive many provisions of the law which are intended for his benefit. This he can do either by express consent, or by

omitting to object at the proper time. It was entirely competent for the defendant to waive any irregularity in the selection of the jurors or the manner of their production in court. This he did when his counsel announced: "We will accept the jury." It was, in effect, the withdrawing of all the previous objections to the competency of the jurors, and a consent to be tried by that jury, which could not afterwards be withdrawn. Ordinarily, a party cannot later object to a matter to which he has once consented. 1 Bish. New Crim. Proc. §§ 117, 118. "One may waive objections to the collected jury, or to a juror, and so be validly tried by an imperfect panel put upon him." Id. § 932; *Pierson v. People*, 79 N. Y. 424; *In re Staff*, 63 Wis. 285, 294; *State v. McMahon*, 17 Nev. 365.

3. The third assigned error is that the verdict is contrary to the evidence. This is predicated on the premise that the evidence shows that the killing was from premeditated design to effect the death of Sullivan, and so was necessarily murder in the first degree. If murder in the first degree, it cannot be murder in the second degree. The conclusion is irresistible if it can be deemed that the evidence conclusively establishes the premeditated design. That is the point of the question. If the evidence left it fairly in doubt, then it was a question for the jury, and its verdict is conclusive upon it. The circumstances of the homicide, as shown by the evidence, do not so certainly indicate premeditated design as that it would not still be possible fairly to question its existence in the mind of the plaintiff in error. It seems that the evidence in that respect would support either of two propositions,— either that the homicide was prompted by a premeditated design to effect the death of Sullivan, or that it was the reckless act of an angry man, evincing a depraved mind, regardless of human life, yet not prompted by that settled purpose to effect the death which constitutes the premeditated design

to effect the death, of the statute.. *Clifford v. State*, 58 Wis. 477–491. If that is so, the verdict is clearly not contrary to the evidence.

*Clifford v. State, supra,* is strongly urged as a case very much in point to sustain the contention of the plaintiff in error. But *Clifford v. State* is not at all in point on the question herein. That was a case of conviction of murder in the first degree, and the only question was whether the evidence sustained the conviction. The plaintiff in error argues from some things which are said in the opinion that the court would not, on that evidence, have sustained a conviction of murder in the second degree. But it is vain to speculate on what the judgment would have been if the question had been different. But the case of *Hogan v. State*, 36 Wis. 226, is very much in point. The question on which it turned was the same, and the essential facts, as bearing on this question, are strikingly similar. A brief outline of the facts in each case will show this similarity. In the case at bar the plaintiff in error had a grievance against the deceased. He had made threats. The parties met in a saloon. They had an altercation. Each called the other a "liar." The plaintiff in error drew his revolver and commenced shooting at the deceased. Deceased fled. Plaintiff in error pursued, and continued shooting after the deceased, inflicting fatal wounds. In the *Hogan Case* there was a grievance. The defendant had made threats. The parties met. The fendant had an ax. There was no altercation. Suddenly, with no apparent present provocation, the defendant struck the deceased a blow on the head with the ax, which stunned him. Then he struck him a mortal blow on the head, with the blade of the ax. That is a stronger case to show premeditated design than the case at bar. In this case there was present provocation, which has a fair bearing upon the question of premeditation. In the *Hogan Case* the court say that the evidence would have amply sustained a conviction

Dowling vs. Lancashire Ins. Co.

of murder in the first degree, yet sustained the conviction of murder in the second degree. The ground upon which the decision was put, and the reasons given, are abundantly satisfactory, and justify the conviction of the plaintiff in error. While the evidence in this case was, no doubt, sufficient to support a conviction of murder in the first degree, it does not establish a premeditated design to effect the death of Sullivan so conclusively as to compel a verdict of murder in the first degree. The question was a fair one for the jury. The verdict is amply supported by the evidence.

*By the Court.*— The judgment of the circuit court is af-firmed.