[No. 14342. Department Two. February 5, 1918.]

## JAHN CONTRACTING COMPANY, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—EXTRA WORK—EVIDENCE—SUFFICIENCY. A contractor for a sea wall at a specified price per cubic yard cannot recover extra compensation for excavating 3,228 cubic feet of excess yardage, because the plans and profile showed an existing ground line indicating but 580 cubic yards, where the plans and profiles did not show the physical condition at the time and the contractor did not rely thereon, but examined the ground and undertook the work with reference to the existing physical conditions, which were not so concealed that the profile would operate as a representation to be relied upon.

TRIAL—FINDINGS. Where there was evidence to sustain a finding, it will not be assumed from a remark of the judge as to doubt on the point that he based his conclusions upon his individual opinions.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — CONTRACTS — ENGINEER'S DECISIONS. Where no change or radical departure was made in the work contracted for, the city engineer's decision that the contractor was not entitled to extra compensation on account of more excavation than called for, is final and conclusive, the contract providing that his decision as to the amount of work done should be final.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 29, 1917, upon findings in favor of the defendant, after a trial to the court on the merits. Affirmed.

[1]Reported in 170 Pac. 549.

*Roberts, Wilson & Skeel* and *J. J. Geary,* for appellant.

*Hugh M. Caldwell* and *Frank S. Griffith,* for respondent.

CHADWICK, J.—This action was brought to recover, *inter alia,* compensation for extra work in the construction of a sea-wall at the foot of Columbia, Yesler and Washington streets, on the west side of Railroad avenue, in the city of Seattle.

Several distinct claims are set forth, and were variously passed on by the trial judge. This appeal is from that part of the judgment which disallows a claim for $3 per cubic yard for the excavation of 3,228 yards of earth. The question is whether the excavation of this material was within the contract. Under the contract, plaintiff was required to make all necessary excavations. It took the contract upon a unit basis of $7 per cubic yard. The contract was let according to certain plans, profiles, and specifications.

Plaintiff contends that the plans and profile show an existing ground line from which it is easily calculated that no more than 580 cubic yards of earth would have to be excavated; and that it prepared its bid upon that basis, whereas, the actual amount of earth to be removed was 3,228 cubic yards. We take it that the plans and profiles had been prepared with reference to a physical condition that had existed some years before the whole of Railroad avenue had been filled in on tide lands.

Mr. W. F. Jahn, a graduate engineer, having the matter in charge, knew, or should have known, the physical conditions, and that the west side of Railroad avenue did not slope down towards the base of the sea-wall to be erected. Jahn was a practical man having many years' experience in construction work, and it

is hardly to be believed that he would understand that the existing ground line was as indicated on the profile, for Railroad avenue had been improved either by paving or planking to its full width.

Plaintiff did not depend on the ground line, as shown by the profile, altogether. In the exercise of ordinary care and prudence, having knowledge of the standard plans and specifications of the city of Seattle and its duty as a contractor in the event of securing the contract, Harry Jahn looked over the ground. He says:

"Q. In fact, you just went down there and glanced through and said: 'I will just take. a chance on that'; is that about what you did? Q. Isn't that a fact, Mr. Jahn? A. I went down there and looked the job over very carefully and figured the job up. I went down several other times. Q. Now, you knew at that time that all the dirt and fill back of the temporary bulkhead had to be taken out where these piers or walls had to be built? A. I knew some dirt had to come out in there. Q. And the footings of the walls would be below the water? A. Would be below the water at high tide; yes. Q. And above water at low tide? A. Above water. Q. How much? A. At extreme low tide several feet. Q. You knew that everything from the base of the walls, to the top of the walls and into the street far enough to let the outside come flush with the west line of Railroad avenue had to be excavated, didn't you? A. Yes, sir."

Other bidders testified that they had bid with reference to the actual physical condition, which was obvious to any careful observer. One bid did not exceed the bid of plaintiff more than $290. The following writings, evidencing the contractual relations of the parties, are also to be considered:

In the notice to contractors and prospective bidders:

"The following approximate quantities are for the purpose of comparing bids only. Payment for same will be based upon the actual quantities as measured in the finished work."

In the specifications under subheading, "Temporary Wooden Bulkhead":

"A temporary wooden bulkhead is to be constructed along the curb line opposite all slips to retain the *earth fill* when the existing bulkhead along the margin is removed."

And under the subheading "Concrete Wall":

"The standard specifications shall apply except where otherwise specified herein."

And under the subheading "Payment for Concrete Wall":

"Concrete walls will be paid for at the rate bid per cubic yard, in place, and will be in full for all labor and material in the completed work, *including all necessary excavating,* mixing and placing of concrete, joints, furnishing, placing and removing all forms, protecting all sewer and cast iron pipe extending through wall, care and protection of existing improvements, and furnishing and placing of expansion joint material, *and all other labor and material necessary for the completed work.*"

And under the subheading "General Stipulations":

"It will be further expressly agreed between the parties to the contract for this improvement that the contract is made subject to the following conditions and stipulations:

"1st.  Contractor's Responsibilities.  The contractor is required to furnish all necessary labor and materials, and to fully complete the work in accordance with the plans and specifications, and to the satisfaction of the city engineer, for the prices bid.  Bidders must examine and judge for themselves as to the location of the proposed work, the nature of the excavation made, and the work to be done.  It is understood that the whole of the work to be performed under the contract for this improvement is to be done at the contractor's risk.

"5th.  Disputes—How Settled.  To prevent all disputes and litigation, it is further agreed by the con-

tractor that the city engineer shall in all cases determine the amount of work to be paid for under the contract for this improvement, and his estimates and decision shall be final and conclusive, subject to the approval of the Board of Public Works."

Under this state of facts, the court held that the contractor should have made its own examinations and determined the amount of earth to be excavated, and that it was not justified in relying entirely upon the profile furnished by the city. We think plaintiff is in no position to contend that its rights are to be determined by the approximation of the profile to the exclusion of those items in the standard specifications, which put upon it a duty of determining for itself the actual amount of earth to be removed.

The intent of the contract was to build a sea-wall facing the streets along the west line of Railroad avenue, and all things necessary to be done were within the contemplation of the parties. There was no direction on the part of the city to do, or to refrain from doing, anything. Plaintiff undertook the work and finished it with reference to existing physical conditions. The case is clearly distinguished upon its facts from those cases which allow for a recovery upon a *quantum meruit,* where the plan is departed from in some radical way, and an added expense not within the reasonable intendment of the contract and to his financial hurt in the way of lost profits is put upon the contractor. Neither is it a case where the physical conditions were so concealed that the profile would operate as a representation upon which a contractor might rely to the exclusion of all other considerations, as for instance, a representation that excavations were to be made in earth to a certain depth, whereas, the ground under a visible strata of earth was rock or cement gravel.

It was as much the duty of plaintiff to satisfy itself of the amount of the excavations as it was of the city to make an accurate estimate of them. The case falls within the reasoning of this court in its discussion of the first item in the case of *Kieburtz v. Seattle,* 84 Wash. 196, 146 Pac. 400.

It is contended that the trial judge made findings upon his individual opinions, to the exclusion of positive testimony. We do not so read the record. The charge is based upon the following remark:

"The ground line in question is a question that is worrying me a good deal. If you have no more witnesses the court may want to get some himself."

No witnesses were called by the trial judge—we do not want to be understood as holding that he would have abused his discretion if he had done so—and later defendant produced a witness who testified that, in making his bid, he had figured the ground line as the west marginal line of Railroad avenue. This is enough to sustain the finding.

Finally, it is insisted that plaintiff is not to be bound by the decision of the city engineer. There having been no change or radical departure within the meaning of those terms, and the work having been done within and not beyond the contract, the city engineer had jurisdiction to make final estimates, subject to the approval of the board of public works, and, when made, such estimate was conclusive on the parties.

Affirmed.

ELLIS, C. J., HOLCOMB, MORRIS, and MOUNT, JJ., concur.