[Crim. No. 2285. In Bank.—October 15, 1920.]

THE PEOPLE, Respondent, v. ERNEST NAKIS, Appellant.

[1] JURY—APPOINTMENT OF ELISOR—POWER OF COURT.—In the absence of the disqualification of both the sheriff and coroner, the court has no power to appoint an elisor to summon a jury.

[2] ID.—METHOD OF SUMMONING JURY — WAIVER BY DEFENDANT IN CRIMINAL CASE.—While the constitutional right to trial by jury cannot be waived by the defendant in a criminal case, the statutory procedure of summoning the jury may be waived by him or his counsel.

[3] ID.—DISQUALIFICATION OF SHERIFF—APPOINTMENT OF ELISOR INSTEAD OF CORONER—WAIVER OF IRREGULARITY.—The right of a defendant in a criminal case, where the sheriff is disqualified, to have the jury summoned by the coroner instead of by an elisor is waived where he knowingly consented, in the presence of an opportunity to object, to the summoning of the jury by an elisor.

[4] ID.—PLACING OF JURY IN CHARGE OF DEPUTY SHERIFF—ABSENCE OF OBJECTION—INSUFFICIENT GROUND FOR REVERSAL.—Irregularity in placing the jury upon retiring for deliberation in charge of a

2. Waiver of jury trial in criminal cases, notes, 1 Ann. Cas. 597; 9 Ann. Cas. 1183.

deputy sheriff, where the sheriff is disqualified, is not a ground for reversal of the judgment, where no objection to the appointment was raised at the trial.

[5] ID.—IRREGULARITIES IN CUSTODY OF JURY — WHEN GROUND FOR REVERSAL.—In the absence of an affirmative showing of prejudice to the defendant, a reversal for irregularities in regard to the custody and management of the jury cannot be had.

[6] CRIMINAL LAW — MURDER — EVIDENCE — PISTOL AND CLOTHING FOUND AT TIME OF ARREST.—In a prosecution for murder by shooting, it was not error to admit in evidence the pistol and bag of clothing found at the time of defendant's arrest near the spot where he was taken into custody, although three weeks had elapsed between the date of the murder and the time of his arrest.

[7] ID.—PISTOL FOUND IN POSSESSION OF DEFENDANT—THEFT FROM WITNESS—RELEVANCY OF TESTIMONY.—Where in a prosecution for murder it was proven that 38 and 41 caliber bullets were found in the body of the deceased and that a pistol capable of discharging bullets of both caliber was found in the cabin where defendant was arrested, the testimony of a witness that he had owned such pistol for several years and that it had been taken from him about a month before the murder, when he and others were robbed by a number of men among whom was the defendant, was relevant as tending to prove that defendant possessed the pistol at the time of the murder.

[8] ID.—PROOF OF ANOTHER CRIME—ADMISSIBILITY.—Whenever proof of one crime tends to prove any facts material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors by inducing the belief that he had been the perpetrator of another crime is no ground for its exclusion.

[9] ID.—ARGUMENT OF DISTRICT ATTORNEY—REFERENCE TO DEFENDANT AS ASSOCIATE OF PRISONERS—ABSENCE OF MISCONDUCT.—In a prosecution for murder, reference by the district attorney in his argument to the jury to the defendant as the known associate of prisoners in the jail was not misconduct where it was brought out upon the examination of defendant, as well as by other witnesses for the defense, that on the afternoon of the day of the murder defendant went to the jail for the purpose of seeing a friend who was then held as a prisoner, and that another of his associates had been in the prison shortly before that time.

[10] ID.—DRAWING OF INFERENCES—RIGHT OF DISTRICT ATTORNEY.—A district attorney has the right, in his argument to the jury to draw any inferences from the testimony which, in his judgment, are logical.

[11] ID.—COMMENT UPON BREVITY OF DEFENDANT'S TESTIMONY — MISCONDUCT OF DISTRICT ATTORNEY.—In a prosecution for murder,

comment by the district attorney during the course of his argument to the jury calling attention to how little testimony the defendant gave was misconduct, but not sufficient ground for reversal where he desisted from further comment upon objection, and the evidence was sufficient to warrant a conviction.

[12] Id.—Failure to Request Admonitory Instruction—Effect on Appeal.—Where the misconduct of the district attorney is such that its effect would be obviated by an instruction and no such aid is invoked, the error cannot be complained of on appeal.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Carl E. Lindsay and Henry Brickley for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones and John H. Riordan, Deputies Attorney-General, and C. E. Beaumont for Respondent.

LENNON, J.—The penalty of death was the sentence imposed upon the defendant in this case, in keeping with the verdict of a jury finding him guilty of murder in the first degree. Edwin Taylor, the deceased, was a familiar character about the streets of Fresno, commonly known as "the old broom man," who had accumulated considerable wealth and was reputed to be in the habit of secreting large sums of money about his person. On May 16, 1919, his body was found in a tractor-shed on the Gibson ranch, a lonely place about twelve miles north of Fresno. About 8 o'clock, or some time between the hours of 8 and 10, on the morning of May 16th, a number of witnesses saw deceased riding in the direction of this ranch and clearly remembered the incident, for it was unusual to see the old broom man in an automobile. Several of these witnesses identified the defendant as the man who was driving the machine in which deceased was riding, and their descriptions of the automobile corresponded in important particulars with the description of a machine rented by defendant on May 15th and returned by him on the afternoon of the following day. Two men, one of whom was the owner of the orchard and the other his assistant, were working in an orchard at a point slightly over a quarter of a mile from the tractor-shed on

the Gibson ranch on the morning of May 16th, and saw deceased and a companion pass by in a machine and stop at the ranch between 9 and 10 o'clock. These men, believing that deceased and the man with him had been sent out for the purpose of poisoning squirrels, watched them, from time to time, as they walked about the place and finally observed the deceased starting toward the tractor-shed, followed by the other man. Soon afterward they heard two shots and a low groan or howl and thought a dog had been killed. About five minutes thereafter the companion of the deceased came out of the shed alone, closed the door, and returned in the machine in the direction from which he had come. Upon his return trip, this man passed within twenty feet of the witnesses, who had walked toward the road for the purpose of observing his features more closely; they testified that the man in the machine was the defendant. In the afternoon these witnesses drove over to the Gibson ranch and found the old broom man lying dead on the floor of the tractor-shed, his pockets either torn open or turned inside out. They immediately notified the sheriff. No money was found on the body of deceased, but an empty canvas money-bag was discovered near the body. Two bullets were taken from the body of deceased, one a 38 and the other a 41 caliber. At the time of defendant's arrest, which occurred about three weeks later, a pistol was found above a window-casing in the room occupied by him at that time; it was a 41 Colt's, which was, according to expert testimony, capable of discharging both 38 and 41 caliber bullets. In order to arrest defendant, it was necessary to pry open two doors of the cabin where he was living, the doors and windows being nailed shut, and defendant was found, wrapped in a quilt, hiding under the bed. Near the shack where defendant was arrested there was discovered a bag containing a suit of clothes, identified as those of defendant, upon which were small stains which were pronounced by an expert to be human blood stains. A witness testified that, on the afternoon of May 19th, he met defendant at a water-tank about one hundred and fifty miles south of Fresno, and that at that time defendant stated to him that he had killed the old broom man and had tried to reach Mexico.

Defendant's case consisted primarily of an attempt to establish an *alibi* by the testimony of two witnesses, corroborated by defendant's own testimony, to the effect that he arrived at the tobacco ranch of a friend a mile or so south of Fresno between 9 and 10 o'clock on the morning of May 16th, and remained there until 11:30. Defendant also sought to contradict the testimony as to the incident at the water-tank on the afternoon of May 19th, by the introduction of a book containing the entries of the dates upon which men had been employed at a tobacco ranch about seventy-five miles north of Fresno, and from which it appeared that on the afternoon of May 19th defendant had been employed at that ranch.

Upon this appeal from the judgment it is conceded by counsel for the defendant, as indeed it must be, that the evidence adduced in behalf of the people's case sufficiently supports the judgment. It is earnestly urged, however, that certain alleged erroneous rulings of the trial court, coupled with the claimed misconduct of the district attorney and an asserted irregularity in the summoning of the jury, were so grievously prejudicial in their operation and effect as to warrant and compel a reversal of the judgment, despite the sufficiency of the evidence to support the verdict.

Error is assigned in the appointment by the trial court of an elisor to summon two special *venires* of jurors. In this behalf the record shows positively and unqualifiedly that counsel for the defendant, in response to the suggestion of the trial court, conceded the disqualification of the sheriff of the county to act in the matter of summoning the needed jurors and the consequent necessity for the appointment of an elisor. The record further shows that counsel for the defendant expressly consented to the appointment of a Mr. Harkness as an elisor in the place and stead of the sheriff for the purpose of summoning the required jurors, and specifically declared: "The defendant is perfectly satisfied with the appointment of Mr. Harkness as elisor." This was done, so the record shows, in order to obviate any objection which might be made to the sheriff summoning the jury because of his conceded disqualification to act in the premises. Thereupon an order was made directing the elisor to summon a special *venire* of fifty jurors, and, when that *venire* was exhausted, a second order was made, also

with the consent of counsel for the defendant, for a second special *venire,* and the same Mr. Harkness, again with the consent of counsel for the defendant, appointed as elisor to summon the additional jurors who were needed for the trial of the case. Despite the record showing of his consent to the course pursued by the trial court for the summoning of the jury, counsel for the defendant, be it said to his credit, insists that, because a human life is involved, he is justified as a matter of professional duty and at the cost of self-stultification, in assailing the order of the trial court excluding the sheriff and appointing an elisor upon the ground that the defendant's right to have a jury summoned in the manner precisely prescribed by law was a right guaranteed by state and federal constitutions, which could not be ignored by the trial court nor waived by either the defendant or his counsel.

[1] An elisor may be defined to be a person designated and directed by a court to summon a jury when the persons designated by law for that duty are disqualified from acting. (Code Civ. Proc., sec. 226; *Bruner* v. *Superior Court,* 92 Cal. 239, [28 Pac. 341].) In the absence of the disqualification of both the sheriff and coroner, the court has no power to appoint an elisor. (*Wilson* v. *Roach,* 4 Cal. 362; *People* v. *Fellows,* 122 Cal. 233, [54 Pac. 830]; *People* v. *Vasquez,* 9 Cal. App. 545, [99 Pac. 982].) Ordinarily, before appointing an elisor, the court should require a formal showing that both the sheriff and the coroner are disqualified (*Bruner* v. *Superior Court, supra; People* v. *Irwin,* 77 Cal. 494, [20 Pac. 56]; *People* v. *Yeaton,* 75 Cal. 415, [17 Pac. 544]), nevertheless it is the duty of the court to determine, of its own motion if need be, whether the sheriff and coroner are disqualified, and, if it be conceded that both are disqualified, an elisor must be appointed. (*People* v. *Le Doux,* 155 Cal. 535, [102 Pac. 517].) Generally speaking, the constitutional right to trial by jury cannot be waived by the defendant, or his counsel, in a felony case, but the manner and method of summoning a jury is the subject matter of legislative control rather than of constitutional provision. That is to say, it is the province of the legislature, subject to the proviso that the fundamental requirement of impartiality be not violated, to prescribe the procedure and designate the officer for the summoning of a jury. (*People*

v. *Harding,* 53 Mich. 48, [51 Am. Rep. 95, 18 N. W. 555];
*Lommen* v. *Minneapolis etc. Co.,* 65 Minn. 196, [60 Am. St.
Rep. 450, 33 L. R. A. 437, 68 N. W. 53]; *Hildreth* v. *City
of Troy,* 101 N. Y. 234, [54 Am. Rep. 686, 4 N. E. 559];
*Mattox* v. *State,* 115 Ga. 212, [41 S. E. 709].) **[2]** While
the constitutional guaranty to a defendant in a criminal
case of trial by jury of necessity embodies the right to have
the jury summoned and selected in substantial compliance
with the particular procedure provided by law (*People* v.
*Coffman,* 24 Cal. 230; *People* v. *Irwin, supra; People* v.
*Compton,* 132 Cal. 484, [64 Pac. 849]), still such procedure,
in its final analysis, confers no more than a statutory right,
the benefit of which may be waived by the defendant or his
counsel. And this is so because the procedure prescribed is
not, in the absence of express constitutional or statutory
inhibition, regarded as a jurisdictional restraint upon the
power of the court to proceed, with the consent of the de-
fendant to a trial of the case pursuant to a procedure for
the summoning of the jury which may not be in strict
accord with the requirements of the statute. (*Queenan* v.
*Territory,* 11 Okl. 261, [61 L. R. A. 324, 71 Pac.
218]; *State* v. *Mortenson,* 26 Utah, 312, [73 Pac. 562];
*State* v. *Albee,* 61 N. H. 423, [60 Am. Rep. 325];
*Perteet* v. *People,* 70 Ill. 171; *People* v. *White,* 20 Cal.
App. 156, [128 Pac. 417]; *Flynn* v. *State,* 97 Wis. 44,
[72 N. W. 373]; Bishop's New Criminal Procedure, sec.
118.) **[3]** The disqualification of the sheriff in the in-
stant case being conceded, the trial court should, in strict-
ness, have selected the coroner in the place and stead of the
sheriff to summon the needed jurors, but the right to insist
upon the selection of the coroner rather than the appoint-
ment of an elisor was lost to the defendant when he know-
ingly consented, in the presence of an opportunity to object,
to the summoning of the jury by an elisor. (*Watkins* v.
*Weaver,* 10 Johns. (N. Y.) 107; *Queenan* v. *Territory,
supra.*) In other words, it was entirely competent for the
defendant directly or through his counsel to waive an ap-
parent irregularity in the manner of summoning the needed
jurors, and this, we take it, the defendant did when his
counsel announced: "The defendant is perfectly satisfied
with the appointment of Mr. Harkness as elisor."

The decision in the case of *Bruner* v. *Superior Court,
supra,* has no application to the facts of the instant case.
While the holding in that case was to the effect that the
summoning and impaneling of a jury for the trial of a de-
fendant were void and the result of their deliberations of
no effect because the jury was summoned by an elisor who
was not selected and appointed by the trial court in sub-
stantial conformity with statutory requirements, it will be
noted that in that case there was no express waiver, as here,
by the defendant of the right of the defendant, in the ab-
sence of a formal and sufficient showing of disqualification
of the sheriff of the county, to have the jury selected by
that officer, or the coroner, rather than by an elisor. Not
only was there no express waiver by the defendant in the
case last cited, but objection, timely objection, was made to
the action of the trial court and steps, timely steps, taken
to conserve the rights of the defendant. The case of *People*
v. *Enwright,* 134 Cal. 527, [66 Pac. 726], also relied upon
by the defendant here in support of the contention that the
trial court was without jurisdiction to proceed to trial with
a jury summoned by an elisor selected and appointed with-
out a formal showing first made of the disqualification of
the sheriff and coroner, is not in point for, in so far as it
relates to the question involved here, it does no more than
decide that ''the point that the special *venire* was placed
in the hands of the coroner, rather than in those of the
sheriff, without any showing why, cannot be raised on this
record. No such fact was stated as the basis of the chal-
lenge.'' In the case of *People* v. *Schmitz,* 7 Cal. App. 330,
[15 L. R. A. (N. S.) 717, 94 Pac. 407, the trial court
''refused to hear the defendant as to the enmity and dis-
qualification of the elisor Biggy,'' and in that case counsel
for the defendant vigorously and steadfastly objected to the
appointment of the elisor and persistently protested against
the refusal of the trial court to permit the defendant to file
counter-affidavits in opposition to the claimed disqualifica-
tion of the sheriff and coroner. So, obviously, the situation
in these and kindred cases is clearly distinguishable from
the situation revealed by the record in the case at bar.

[4] Nor is the action of the trial court in placing the
jury in charge of a deputy sheriff, when it retired to de-
liberate upon its verdict, a ground for the reversal of the

judgment. While the deputy was, perhaps, technically disqualified by reason of the admitted disqualification of the sheriff from official participation in the proceedings (*People* v. *Le Doux, supra*), no objection to his appointment was raised at the trial, and, in fact, it was at one time suggested by counsel for defendant that the jury be placed in charge of the sheriff himself. The rule that, by failing to call the court's attention thereto by timely objection at the trial, a defendant in a criminal case may waive his right to object to certain irregularities and errors not basal in their nature has frequently been applied to irregularities in matters concerning the custody and control of the jury. (*People* v. *White, supra; People* v. *Tarm Poi,* 86 Cal. 225, [24 Pac. 998] ; *Price* v. *United States,* 14 App. D. C. 391; *Dreyer* v. *People,* 188 Ill. 40, [58 L. R. A. 869, 58 N. E. 620, 59 N. E. 424] ; 187 U. S. 71, [47 L. Ed. 79, 23 Sup. Ct. Rep. 28, see, also, Rose's U. S. Notes].) Where a technical error is committed at the trial to which a defendant gives tacit consent, the right to object cannot be held in abeyance until defendant ascertains the nature of the verdict, but such right is waived upon the failure of the defendant to avail himself of it when the opportunity was fairly presented. (*People* v. *Kramer,* 117 Cal. 647, [49 Pac. 842] ; *Queenan* v. *Territory,* 190 U. S. 548, [47 L. Ed. 1175, 23 Sup. Ct. Rep. 762, see, also, Rose's U. S. Notes] ; *Sylvester* v. *State,* 46 Fla. 166, 185, [35 South. 142].) Moreover, in the instant case no attempt has been made to demonstrate that any prejudice has resulted from the error. **[5]** In the absence of an affirmative showing of prejudice to the defendant a reversal for irregularities in regard to the custody and management of the jury cannot be had. (*People* v. *White, supra; Jarnagin* v. *State,* 18 Tenn. (10 Yerg.) 529; *Speer* v. *State,* 57 Tex. Cr. Rep. 297, [123 S. W. 415] ; *Galan* v. *State,* 68 Tex. Cr. Rep. 200, [150 S. W. 1171] ; *Holmes* v. *State,* 70 Tex. Cr. Rep. 214, [156 S. W. 1172].) The error complained of in the case at bar is no more inherently prejudicial than those committed in the cases cited, and, there being neither an objection at the trial nor an affirmative showing of prejudice, it does not constitute ground for reversal.

**[6]** It was not error to admit in evidence the pistol and bag of clothing found at the time of defendant's arrest near the spot where he was taken into custody. The fact that a

CLXXXIV Cal.— 8

period of three weeks had elapsed between the date of the murder and the time of the arrest might affect the weight of this particular evidence, but would not render it incompetent. As was stated in the case of *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 50, [103 Pac. 951, 955]: "As a part of the original case of the people, we think the testimony with regard to the finding of the pistols was proper as furnishing a circumstance bearing upon the charge, whether directly or remotely was for the jury to decide in view of all the other facts and circumstances." (*People* v. *Fitzgerald,* 138 Cal. 39, [70 Pac. 1014]; *People* v. *Argentos,* 156 Cal. 720, 726, [106 Pac. 65].) [7] A Chinese witness testified to the effect that he had owned the pistol in question for over thirty years and that it had been taken from him, about a month before the murder, at a time when he and other Chinese were robbed by a number of men among whom was the defendant. The introduction of this testimony was objected to on the ground of irrelevancy and also for the reason that it tended to prejudice the defendant by showing the commission of another crime. It having been proved that 38 and 41 caliber bullets were found in the body of the deceased and that a pistol capable of discharging bullets of both caliber was found in the cabin where defendant was arrested, it became a relevant subject of inquiry whether defendant possessed that pistol at the time of the murder, and evidence which tended to prove such a fact likewise became relevant. (*People* v. *Rogers,* 71 Cal. 565, [12 Pac. 679].) [8] Whenever proof of one crime tends to prove any facts material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors by inducing the belief that he had been the perpetrator of another crime is no ground for its exclusion. (*People* v. *McGilver,* 67 Cal. 55, [7 Pac. 49]; *People* v. *Rogers, supra; People* v. *Walters,* 98 Cal. 138, [32 Pac. 864]; *People* v. *Ebanks,* 117 Cal. 652, [40 L. R. A. 269, 49 Pac. 1049].) The jury was carefully instructed as to the purpose for which this evidence was admitted and directed not to consider it "for any other purpose whatsoever." One of the witnesses to the occurrences at the Gibson ranch signed a written statement prior to the trial, in which he declared that he could not swear that the man he saw leaving the ranch in the automobile was the

defendant. At the trial the witness testified that this state-
ment, which was not made under oath but was signed in the
office of one of the attorney's for defendant, was made by
him as the result of a bribe received by him from the
brother of defendant. These facts, of course, were merely
for the consideration of the jury in determining the cred-
ibility of the witness. No attempt was made to impeach
the companion of this witness, who testified to practically the
same facts, in regard to the events at the ranch and the iden-
tity of the man in the machine, as those sworn to at the
trial by the witness who had previously signed the con-
tradictory statement.

[9] Turning to the comments of the district attorney
during the course of his argument to the jury, claimed to
have been so far afield as to constitute formidable mis-
conduct on his part, the reference to defendant as "the
known associate of prisoners in the jail" was not entirely
without support in the evidence. The fact was brought out
upon the examination and cross-examination of defendant,
as well as by other witnesses for the defense, that, on the
afternoon of the day of the murder, defendant went to the
jail for the purpose of seeing a friend who was then held
as a prisoner, and that another of his associates had been
in prison shortly before that time. [10] A district attor-
ney has the right, in his argument to the jury, to draw any
inferences from the testimony which, in his judgment, are
logical. (*People* v. *Vaughn,* 25 Cal. App. 736, [147 Pac.
116].) The book of entries of employment introduced for
the purpose of proving defendant's whereabouts on May 19,
1919, concerning which the district attorney stated that the
judge "in his generosity, permitted this to be introduced
here," was a doubtful piece of evidence at best. The owner
of the book, being himself incapable of reading or writing,
caused the dates of employment to be entered by men in his
employment and he was himself unable to attest the correct-
ness thereof; the man who made the particular entry was
neither produced nor accounted for at the trial. The re-
mark was, therefore, not wholly without justification. More-
over, upon defendant's counsel objecting to the remark, the
district attorney immediately added the qualification "be-
cause he [the trial judge] wanted to give every possible op-
portunity for the defendant to prove anything that might

go to show his innocence, and that was correct." In view of this qualification, the statement could not have been prejudicial. (*People* v. *Raber,* 168 Cal. 316, [143 Pac. 317].) [11] The comment of the district attorney during the course of his argument to the jury by which he called attention to "how little testimony the defendant gave" was misconduct. (*People* v. *McGungill,* 41 Cal. 429.) If a district attorney persists in commenting upon the failure of defendant to testify or if the evidence against defendant is not sufficiently strong to warrant a conviction notwithstanding remarks of that nature, the judgment may be reversed because of such misconduct (*People* v. *Derwae,* 155 Cal. 592, [102 Pac. 266]), but, in view of the fact that, in the present case, the district attorney desisted from further comment along that line upon objection thereto, and in view of the additional fact that such a comment could not have operated as an inducement to the verdict in the presence of the overwhelming evidence against defendant, we do not consider it a ground for reversal in this case. Moreover, the record shows that counsel for defendant, after objecting to the remark, said: "Let the objection stand. I assign it as error. That is enough," and refrained from requesting an instruction that the jury disregard the remark. [12] Where the error is such that its effect would be obviated by an instruction to the jury to disregard it and no such aid is invoked, the error cannot be complained of on appeal. (*People* v. *Shears,* 133 Cal. 154, 159, [65 Pac. 295]; *People* v. *Babcock,* 160 Cal. 537, [170 Pac. 549]; *People* v. *Wong Hing,* 176 Cal. 699, [169 Pac. 357]; *People* v. *Warr,* 22 Cal. App. 663, [136 Pac. 304]; *People* v. *Vaughn, supra.*) Inasmuch as the court was not once, during the course of the argument to the jury, requested to instruct the jury to disregard the improper statements of the district attorney, and such an admonition would, doubtless, have been sufficient to cure any effect the remarks might have produced, the claimed misconduct in argument cannot be considered on appeal.

On direct examination defendant testified, as previously stated, that he visited a friend in the jail on the afternoon of May 16th. Upon cross-examination, the district attorney asked if this friend, and another associate of defendant, "were both charged with the crime of robbery at the time." The court sustained an objection to this question and, in

compliance with a request from defendant's counsel that the jury be instructed to disregard the question, directed the jury "not to pay any attention to the questions that are asked—any questions that are asked that are not permitted to be answered." While the ruling was possibly not as emphatic as might be desired under the circumstances, nevertheless, since it was given immediately following the sustaining of an objection the reasons for which had been fully explained by counsel for defendant, it cannot be said that it was not sufficiently definite for the purpose of advising the jury that the question that had just been asked was to be disregarded by them.

After a careful review of the evidence adduced upon the whole case, we are of the opinion that the verdict found by the jury was not the result of prejudice and was uninfluenced by any of the errors or irregularities complained of. (*People* v. *Lawlor*, 21 Cal. App. 63, [131 Pac. 63].)

The judgment is affirmed.

Sloane, J., Lawlor, J., Shaw, J., Angellotti, C. J., Olney, J., and Wilbur, J., concurred.

Rehearing denied.

All the Justices concurred, except Sloane, J., who was absent.