THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS GONZÁLEZ VILLAPOL, Defendant and Appellant.

No. 8348. Argued December 6, 1940.—Decided December 16, 1940.

*Frank Torres* for appellant. . *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The appellant herein was prosecuted and convicted in the District Court of Ponce for the crime of arson (sec. 407 of the Penal Code, 1937 ed.), in that he did "wilfully and maliciously set fire to and burn an unharvested sugar-cane plantation, the property of Mario Mercado e Hijos·. . ."

The present appeal is based on four alleged errors which are attributed to the court and which we will discuss in the same order in which they are assigned in the brief of the appellant.

1. Denial of the motion made by the defendant to have the jury retire during the attack made by the defense on the admissibility of the evidence of other crimes separate. and different from the one charged.

2. Admission of evidence of other crimes different from the one charged in the information.

These two assignments must be considered together.

The incident which gave rise to these assignments occurred as follows. The district attorney had offered the

testimony of Benjamín Tirado, who stated that on the day of the occurrence when he was coming towards his house in the direction of the town, he met the defendant who was at the edge of the cane field going into the same; when the defendant saw the witness he looked surprised and leaned on the wire fence and stated that he had a pain caused by a rum he had drunk; that the witness watched and saw the defendant take out a match and set up the fire and then go away towards Los Sitios; that then he came out from where he was hiding and went to inform the cultivation chief, Etanislao Febre; that he knew the defendant; that he saw him start the fire; that he was sure and could swear that it was the defendant. He was followed by the witness for the prosecution, Etanislao Febre, cultivation chief of the Central Rufina, who stated that he knew the defendant; that on May 14, 1937, during an inspection that he made at noon of the cane field known as "Matadero," accompanied by Antonio Rullán, overseer of the central, he observed that someone was coming out, that a fire had started in said field, and that at that moment Luis González Villapol, the defendant, came out running from said field; that at the same time he saw Benjamín Tirado further on, who was coming to inform him who was the individual who had set up the fire; that he told Tirado that the latter need not tell him because he had already seen him; that he was sure that it was the defendant the person whom he saw come out running from the cane field. On reaching this point the district attorney continued the examination of the witness Febre, thus:

"Witness, did this man work at the central before that?

"Yes, sir.

"Do you know whether he had been suspended?

"He was not suspended. Don Mario Mercado Montalvo after he became ill, sent him a pension, but on one occasion some brass pieces were missing from the central. . . .

"Defense counsel: We object to that kind of testimony.

"Judge: Do not say what was missing. That matter of the brass pieces must be stricken out. Do not say anything about it.

"District Attorney Pierluissi: We are going to maintain the admissibility of that because it tends to establish the motive, your honor. We think that where a motive for the crime must be proved that kind of evidence is admissible.

"Judge: The court thought that the only thing you were going to prove was that he had defrauded.

"District Attorney Pierluissi: It is to prove the motive, although at the same time evidence of other crimes may arise. The theory, the principle, is that the theory of other crimes is not admissible as a general principle, unless it is to prove the motive. The Supreme Court has so held in the case of *People* v. *Pérez*, reported in volume 47 P.R.R. 724.

"Attorney Frank Torres: We are going to ask that the jury retire because this is a legal question which might prejudice the jury one way or another. In order not to waste any time, so that the jury will not learn of the incident.

"Judge: If all the objections that are made, unless fundamental questions are involved, and each time that a question is objected to the jury must withdraw, then we would never finish. . . .

"District Attorney Pierluissi: The rule is that evidence of other crimes is not admissible, unless to establish the motive or the transaction, or the design or plan.

"Judge: That is the theory of the case.

"District Attorney Pierluissi: I have already explained to my colleague what I thought, in order that my colleague might know on what my opinion rests; what we seek by this question to the witness is to establish the motive of the crime.

"Judge: The other side.

"Attorney Frank Torres: I would not really desire to discuss this matter before the jury and for that reason I made the motion. As the court has stated that for every question the jury must retire. . .

"Judge: The court can not have the jury retire each time that one of the parties so asks, because this is a question of law for the discussion of which the court thinks it is not necessary to withdraw the jury.

"Attorney Frank Torres: We take exception to the ruling of your honor."

After a long argument regarding the admissibility of the evidence objected to by the defense, the lower court over-

ruled the objection, the defense took an exception and the examination continued thus:

"Stenographer reading:

"District Attorney: Do you know whether he had been suspended?

"Witness: He was not suspended. Don Mario Mercado Montalvo after he became ill, sent him a pension, but on one occasion some brass pieces were missing from the central. . .

"Judge: Proceed.

"Witness: After the brass pieces were missed and the investigation was made, the conclusion was reached that they had been taken by this man, and then Don Mario ordered that the pension be suspended.

"Attorney Frank Torres: Let it be understood that that part of the testimony has been objected to.

"Judge: Yes, an exception may be taken.

"District Attorney Pierluissi: So that then his pension was suspended?

"Witness: Yes, sir.

"Q. Witness, are you sure that it was he and no other person the one you saw come out running from the place where the cane was burning?

"A. The same one."

The testimony of the witnesses Tirado and Febre was fully corroborated by that of Antonio Rullán, overseer of the Central Rufina, in charge of the cultivation of the cane, who identified the accused as the person whom he and the other two witnesses saw come out running from the burning cane field.

The question to be decided by us is whether the fact that the pension formerly paid by the central to the defendant had been stopped when it was discovered that he had stolen some property belonging to the former, was admissible in evidence to prove the motive which the defendant had for committing the crime charged against him. If we should hold in favor of the admissibility of that evidence, then any error that might have been committed in not withdrawing the jury while the legal question was being discussed would not be prejudicial to the defendant.

We are of the opinion that the better practice is to have the jury retire during discussions upon questions relating to the admissibility of the evidence, for it might well happen that in many cases, even though the point of law involved should be decided in favor of the defendant and the evidence offered against him rejected, the discussion might create in the minds of the jury an unfavorable impression or prejudice against the defendant. Of course, if the evidence is legally admissible, the presence of the jury during the discussion as to its admissibility would have caused no prejudice to the defendant.

██ The well-established general rule is that evidence of the commission by the defendant of an independent and different crime from the one under investigation at the trial, is not admissible against him. The wise and just purpose of said rule is to avoid the danger of defendant being convicted where the evidence introduced against him at the trial is insufficient. Said general rule, however, is subject to exceptions as we will see from the decisions that we will cite presently.

In *People* v. *Juarbe,* 43 P.R.R. 428, there was involved an information for burglary in the first degree. The district attorney offered in evidence the criminal record of the defendant, from which it appeared that the latter had been previously convicted of various crimes of forgery, burglary, and larceny, none of which had any connection with the offense charged in the information on which he was being tried. The evidence had been admitted by the lower court solely and exclusively for the purpose of adding to the evidence otherwise introduced the element of *intent.* This Supreme Court, conceding as an exception to the general rule, that ''evidence of a crime independent of the one charged, can be admitted in special cases to prove knowledge, intent, purpose, or plan,'' reversed the judgment appealed from and ordered a new trial, as it considered that a prejudicial error had been committed by the admission of the

criminal record of the defendant, since the evidence introduced up to the time when said record was offered by the district attorney was insufficient to connect the defendant with the criminal act charged against him.

In the case of *People* v. *Pérez*, 47 P.R.R. 724, there was involved an indictment for a crime of embezzlement charging the defendant with having appropriated to his own use a Government check issued in favor of another person. The district attorney presented in evidence other checks which had been appropriated by the defendant in the same manner as the one on which the indictment was based, for the purpose of showing a fraudulent intent, and the court admitted the same over the objection of the defense. In overruling the assignment of error which the defendant-appellant had set up in that connection, this court said:

"The rule is that evidence of other offenses cannot be produced. The evidence should be circumscribed to the prosecuted offense. But there is the exception that where the showing intended to be made, with the evidence of those other offenses, is the guilty knowledge with which the defendant acted in the prosecuted one, said evidence is admissible. See what the Supreme Court of California says on the subject in *People* v. *Gray*, 66 Cal. 271.

"* * * * * * *

"The question is not a new one in this jurisdiction. It was studied in *People* v. *Juarbe*, 43 P.R.R. 428. It was decided therein that as an exception to the general rule 'evidence of other offenses is admissible to show knowledge, intent, purpose, or plan.' "

The following excerpt taken from Underhill's Criminal Evidence, 4th ed., contains the rule which we consider as applicable to the present case:

"Sec. 184. *Relevant evidence not inadmissible because indirectly proving or tending to prove another crime.—Dissimilar crimes united in motives.*—All evidence is relevant which throws, or tends to throw, any light upon the guilt of the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time, the accused has been guilty

of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Evidence of other acts to be available must have some logical connection and reveal evidence of knowledge, design, plan, scheme, or conspiracy of the crime charged; or circumstantial evidence of identity of the person charged with the crime; or tend to corroborate direct evidence admitted. *Thus the fact that the evidence introduced to prove the motive of the crime for which the accused is on trial points him out as guilty of an independent and totally dissimilar offense is not enough to bring about its rejection, if it is otherwise competent.* Thus, to illustrate, where it was necessary for the prosecution to show the absence of the accused from the state to avoid the statute of limitations, it was admissible to prove that the accused had spent several years in a penitentiary in another state, though this evidence tended to show accused had committed a felony. *Under this exception to the general rule, where facts and circumstances amount to proof of another crime than that which is charged, and it appears probable that the crime charged grew out of the other crime, or was in some way caused by it, the facts and circumstances of the other crime may be proved to show the motive of the accused. . .* Thus, it may be shown that the victim of a homicide, for which the defendant is on trial, was a police officer, or other person who, when he was killed, was engaged in investigating the circumstances of another prior and independent crime of which the accused was suspected." (Italics ours.)

See *Moore* v. *United States,* 150 U.S. 57, 37 L. Ed. 996; *People* v. *Nakis,* 184 Cal. 105; *Gore* v. *State,* 162 Ga. 267, 134 S. E. 36; *People* v. *Dietz,* 214 N.Y.S. 517; *Johnson* v. *State,* 249 P. 971; *State* v. *Pittman,* 134 S.E. 514.

In *People* v. *Nakis, supra,* there was involved a prosecution for murder committed by shooting. The court had permitted a witness to testify that he had owned the pistol in question for over thirty years and that it had been taken from him, about a month before the murder at a time when he and other persons were robbed by a number of men among

whom was the defendant. The introduction of this testimony was objected to for the reason that it tended to prejudice the defendant by showing the commission of another crime. In deciding adversely to the appellant the error assigned, the court said:

"Whenever proof of one crime tends to prove any facts material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors by inducing the belief that he had been the perpetrator of another crime is no ground for its exclusion."

In *People* v. *Thompson*, 212 N.Y. 249, 106 N.E. 78, at the trial of a cause for statutory rape, there was admitted evidence of acts of sexual intercourse by the defendant and the minor prior to the act charged in the indictment. The Appellate Division reversed the judgment, and upon the case being appealed by the People to the Court of Appeals, the latter reversed the Appellate Division and affirmed the judgment of conviction, saying:

"It is a general rule that it is error to receive evidence, as proof of the offense charged, that an accused has committed a criminal offense other than that charged in the indictment. Evidence which tends only to prove collateral facts, and has not a natural tendency to establish the fact in controversy, should be excluded because: (*a*) It would have a tendency to withdraw and mislead the attention and deliberation of the jury from the real issue under inquiry; and (*b*) would subject the accused to charges unconnected with that issue and against which he had no reason to prepare a defense. (Citations.) This rule has, however, exceptions in those cases in which the evidence offered has a natural tendency to corroborate or supplement admitted direct evidence. (Citations.)"

The appellant in the present case bases his whole argument against the admissibility and relevancy of the questions put to the witness Febre, on the famous case of *People* v. *Molineaux*, 168 N.Y. 264, 61 N.E. 286. We will examine said case.

Molineaux was indicted for murder in the first degree. He was charged of having sent by mail to a Mr. Cornish,

a bottle labeled ''Bromo Seltzer,'' which really contained cyanid of mercury mixed with the ingredients of bromo seltzer. Mrs. Adams, in whose house Cornish lived, asked the latter for something to cure a headache and Cornish gave her the bottle that he had received by mail. Shortly after taking the dose, Mrs. Adams died a victim of the poison.

At the trial of the case the prosecution, after introducing evidence of the unfriendly relations existing between the defendant and Cornish, in order to establish the motive for the crime, offered, and the lower court admitted, evidence to show that the defendant Molineaux was responsible for the killing of one Barnet, who had died two or three months before Mrs. Adams and under similar circumstances of those attending the death of said lady. Evidence was also admitted to show the motive which the defendant had for poisoning Barnet.

The judgment rendered against Molineaux was reversed and a new trial ordered after the Court of Appeals reached the conclusion that the general rule against the admission of evidence of the commission of a prior crime different from the one charged in the indictment had been violated; and as it considered that the case was not comprised within the recognized exception to the said rule allowing the introduction of evidence of another offense to establish the motive which the defendant had to commit the crime charged against him. Regarding this question the Court of Appeals of New York said:

''First in order, if not in importance, is the question whether any evidence was admissible concerning the alleged killing of Barnet. . . .

''As has been disclosed by the foregoing statement of facts, evidence was received upon the trial tending to connect the defendant with the felonious killing of Barnet, for the purpose of proving his guilt of the crime of poisoning Mrs. Adams, which was the offense charged in the indictment. The general rule of evidence applicable to criminal trials is that the state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of

the crime charged. This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto.''

After citing numerous cases in which the general rule was applied, the Court of Appeals of New York went on to say:

''Let us now endeavor to apply to the case at bar each of these exceptions to the general rule:

''First. As to motive: It is obvious that in every criminal trial, when proof of motive is an essential ingredient of the evidence against a defendant, the motive to be established is the one which induced the commission of the crime charged. This is too simple for discussion. To hold otherwise would be to sanction the violation of the general rule under the guise of an exception to it. What was the motive assigned for the defendant's alleged attempt to kill Cornish? Hatred, engendered by quarrels between them, in which Barnet took no part, and of which, so far as the record shows, he had no knowledge. What was the motive which is said to have moved the defendant to kill Barnet. Jealousy caused by the latter's intervention in the love affair of the former. The mere statement of these two motives suffices to show that they have no relation to each other, and that the evidence which tends to prove the killing of Barnet throws no light upon the motive which actuated the attempt upon the life of Cornish. So apparent, indeed, is this diversity of motive in the two cases, that the learned counsel for the people upon the argument herein abandoned the claim that there was anything in common between them, and ingeniously sought to create a single motive out of the alleged forgeries by the defendant of the names of Barnet and Cornish. Of course, no inferences can be drawn from these alleged forgeries without assuming that the Barnet and Cornish letters were all properly received in evidence, and proven to have been written by the defendant. . . .

"What has been said about the Barnet letters is true of all the evidence relating to the alleged killing of Barnet. Even if it be admitted that it proves the commission of an independent crime, with an adequate motive behind it, it contributes nothing to the subject of motive in the case at bar."

And after citing many cases wherein the evidence of other offenses had been admitted, that court further said:

"Cases of this character might be multiplied indefinitely, but enough have been cited to show that, when evidence of extraneous crimes has been held competent upon the existence of motive, it has been either the specific motive which underlay the particular crime charged, or a motive common to all of the crimes sought to be proved."

The evidence in the case at bar was offered for the specific purpose of proving the motive which the defendant had for causing damage to the owner of the Central Rufina. According to the decisions the question was objected to at the proper time, that is, after the admission of the direct testimony of the two witnesses who saw and identified the defendant at the moment when he set fire to the cane and when he ran after committing the act. Said direct testimony, if believed, as it was believed by the jury, would, in our judgment, have been amply sufficient in itself to justify the conviction of the defendant. The district attorney was not bound to prove the existence of a motive, but he was entitled to reinforce and supplement the direct evidence by showing that the defendant had caused the injury charged, not to satisfy a mere caprice, but moved by a feeling of revenge against those who had withdrawn the pension which he formerly had enjoyed. A connection exists between the fact of the withdrawal of the pension from the defendant as a punishment of the alleged stealing of the property of the central and the fact established by the direct evidence for the prosecution.

The lower court did not err in admitting the evidence showing defendant's motive for committing the crime charged against him in the information. As said evidence

was legally admissible, any error which might have been committed in not withdrawing the jury was harmless.

3. That the lower court erred in denying the motion for a new trial.

■ The grounds for said motion were the alleged commission by the lower court of the two supposed errors which we have already discussed and overruled, and the alleged discovery of new evidence which the defendant "was unable to adduce at the trial notwithstanding the great and diligent effort made by him to produce it at the trial of the cause."

After an examination of the two affidavits offered in support of the motion for a new trial, we are of the opinion that they constitute cumulative evidence. By them it was sought to prove that at the time of the fire the defendant was at a place other than the one where he had been seen by all the witnesses of the prosecution. It was that same defense which the defendant sought to establish at the trial, by offering the testimony of two other witnesses, to whom the jury accorded no credit. Moreover, the record fails to show sufficiently that the defendant could not have discovered the new evidence by the exercise of reasonable diligence. The lower court made proper use of its discretion. *People* v. *Lebrón*, 23 P.R.R. 611; *State* v. *Pittman*, 134 S.E. 514; *Baird* v. *U. S.*, 279 Fed. 509; *Smith* v. *U. S.*, 231 Fed. 696.

The fourth assignment is not discussed in the briefs and we must regard it as abandoned.

For the reasons stated the judgment appealed from must be affirmed.