## THE PEOPLE v. JAMES HARDING.

[See post, p. 481.]

*Trial by jury—Jury commission.*

1. The constitutional right of trial by jury is not infringed by How. Stat. §§ 7623—30 which authorize jurors to be drawn by a board of jury commissioners appointed by the Governor. Nor are the principles of local self-government which underlie the Constitution.

2. Jurors must be electors and live in the vicinage; but the Legislature can prescribe other qualifications and change the mode of choosing

them, and the officer by whom and the lists from which they are chosen.

3. *It seems* that a challenge to the array will lie on the action of jury commissioners wherever at common law it would lie to the action of the sheriff or his subordinates in selecting or summoning the jury.

4. The administration of criminal law concerns the State and not merely localities; and the selection of jurors in criminal cases is a duty that is not necessarily of a local administrative character. It may be done by officers authorized by the Legislature and appointed by the Governor; and the Legislature may require the county in which such officers act to pay their expenses.

Exceptions before judgment from the Recorder's Court of Detroit. (Swift, J.) January 29—March 6.

INFORMATION for larceny. Conviction affirmed.

*John G. Hawley* for respondent appellant. The State cannot assume the right to appoint local officers: *People v. Hurlbut* 24 Mich. 44; *Attorney-General v. Lothrop* id. 235 ; *Attorney-General v. Common Council* 29 Mich. 108.

Attorney-General *Van Riper* for the People.

CHAMPLIN, J. Harding was convicted in the Recorder's Court of the city of Detroit of the crime of larceny from a store in the day-time. After the jury were impaneled, and in proper time, the defendant interposed a challenge to the array for the reason that the law under which they were selected is unconstitutional.

In 1881 the Legislature passed an act [1] authorizing a board of jury commissioners for the county of Wayne, three of whom should reside within the corporate limits of the city of Detroit, and three outside, but within the county of Wayne. They were classified so that the term of office of two should expire every two years. The offices are to be filled by appointment made by the State senate on the nomination of the Governor. The commissioners are required, before entering upon their duties, to take the oath of office prescribed by the Constitution of this State, and file the

[1] Act 160 of 1881.

same in the office of the county clerk.   They are to appoint
one of  their number president, and also appoint a secretary.
A record of their proceedings is required to be kept, and
they are to serve without pay, except mileage.   They are to
be electors and freeholders of the county.   A majority of
them are to meet on the third Monday of May at the office
of the county treasurer, and jointly proceed to select, from
the persons assessed on the assessment rolls on file in the
county treasurer's office of each township and ward of the
county for the preceding year, lists of grand and petit jurors
for the circuit court for the county of Wayne, in the manner
provided by sections eight, nine, ten and eleven of chapter
one hundred and eighty-nine of the Compiled Laws of 1871.[1]
The lists are to be recorded at length in the journal of the
board, and subscribed by at least a majority of the commis-
sioners, and a duplicate thereof filed in the office of the
county clerk, and this list is to be considered and treated by
him as the lists mentioned in sections  thirteen, fourteen and
fifteen of said chapter.[2]   The commissioners are also to make
lists of petit jurors for each of the municipal courts of record
of . the city of Detroit, to be taken from the assessment rolls
of the wards of the city, in the same manner as the lists for
the circuit courts, and these are to be filed with the clerks of
the municipal courts respectively ; and juries for these courts
are to be drawn in the same manner as for the circuit court.
There are other provisions of the act, but the above are suf-
ficient to an understanding of the question raised.   It will
be seen that no change was made in the existing law relative
to the qualifications of jurors, or the lists from which their
names should be selected.   The objection goes only to the
officers who make the selection, and the mode of their ap-
pointment.   It is claimed on behalf of the respondent that
the Constitution guarantees him a jury trial, and that by this
is intended such a jury as was summoned at the common
law at the time of the adoption of the Constitution.

Two provisions of the Constitution are supposed to be in-

---

[1] How. Stat. §§ 7554–57.
[2] How. Stat. §§ 7559–61.

fringed upon by this act—one relating to the right of trial by jury, and the other to the written and *unwritten* guaranties of that instrument, which secures to municipalities the right of local self-government.

At common law it was requisite that all persons serving upon grand or petit juries should be good and lawful men; by which was intended that they must be liege subjects of the king, and neither aliens nor persons outlawed, attainted of any treason or felony, or convicted of any species of crimen falsi, as conspiracy or perjury, which may render them infamous. 1 Chit. Crim. Law, 307  By our statute (How. Stat. §§ 7554, 7555) they are required to be electors, and persons who are in possession of their natural faculties, and not infirm or decrepit, of good character, of approved integrity, of sound judgment, and well informed, and conversant with the English language, and free from all legal exceptions. It will thus be seen the qualifications are to-day the same substantially as at common law. By the statute of 6 Geo. IV. c. 50, Parliament attached certain property qualifications, and in this State the Legislature has added certain qualifications to protect the rights of parties, and provide an intelligent and impartial jury.

If the objection here urged to the *persons* who make the selection is good, it may for the same reason be said that the Legislature has no right to make any change in the qualifications of jurors, or of the source from which they shall be selected, since such changes would affect the panel, and doubtless would cause it to be composed of different persons from what it would have been had the law remained the same as it was at the time the present Constitution was adopted.

A brief review of the statutes upon the subject is proper in order to show what has been the course of legislation, both before and since the Constitution of 1850, as tending to throw some light upon the question under consideration. Under the territorial Act of 1820 the jury were selected by the sheriff from those having the right to vote for delegates to Congress.[1]  Under the Act of 1827 petit jurors were to be

---

[1] 1 Terr. L. 490.

judicious persons, having the qualifications of electors, and they were selected and returned by the assessors of the towns, to the county clerk.[1] In 1836 Michigan was admitted into the Union as a sovereign state, under a constitution previously adopted, in which it was declared that "the right of trial by jury shall remain inviolate,"[2] and in criminal cases "the accused shall have the right to a speedy and public trial by an impartial jury of the vicinage;"[3] and in the Revised Statutes of 1838[4] it was provided that " all persons being electors under the second article of the Constitution of the State, shall be liable to be drawn and to serve as jurors," except those exempted by the Act. It was made the duty of the assessors and town clerk at the time of their annual meeting, to review their assessment roll, to prepare a list of such inhabitants of the town, not exempted, as they shall think well qualified to serve as jurors, being persons of good moral character, of sound judgment, and free from all legal exceptions; and these lists were to be filed with the county clerk. In 1840 this law was amended so as to make it the duty of the assessor and alderman of each ward of the city of Detroit to prepare the lists of jurors in their respective wards in the same manner as the assessors of townships. These lists were to be signed by the assessor and alderman, and filed with the city clerk, and he was to transmit them to the county clerk.[5] By the Revised Statutes of 1846,[6] jurors were to have the qualifications of electors, and in making selection the officers were to take the names of such persons only as are not exempt from serving, " who are in possession of their natural faculties, and not infirm or decrepit; of fair character, of approved integrity, of sound judgment, and well informed, and free from all legal exceptions." The selection was to be made by assessors and township clerk of each township, and the assessor and alderman of each ward in the city of Detroit, from the assessment roll of the same year.

This was the law which was in force when our present

[1] 2 Terr. L. 467.
[2] Const. 1836, art. i, § 9.
[3] Const. 1836, art. i, § 10.
[4] Pt. 3, tit. ii, ch. 5, sec. 1.
[5] Act 36 of 1840.
[6] Ch. 103, sec. 9.

Constitution was adopted, in 1850. This repeats the declaration contained in the former constitution, that "the right of trial by jury shall remain," [1] and asserts that "in every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than twelve men in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense." [2] Was it intended by this provision of the Constitution that it would be incompetent for the Legislature thereafter to change the law relative to the manner of selecting jurors, or to the person or officer who should make the selection, or the lists from which the selection should be made?

In some states the selection is made from the registration list of voters. Would it not be competent for the Legislature to so provide in this State? I think that it would. The only restriction upon the legislative power which occurs to me is that jurors shall have the qualifications of electors, and that they shall reside in the vicinage. The latter idea has always been associated with the jury system in criminal cases in the jurisprudence of both England and America, and is as essential as that the number shall consist of twelve.

The trial by jury preceded Magna Charta, and was a well-known institution at the time the barons assembled at Runnymede. The great charter only declared what was claimed as an existing right: that no person should be deprived of life, liberty, or property unless by the laws of the land or the judgment of his peers. In this country, where no class distinctions are recognized, an elector is considered in the eye of the law as the peer or equal of any other man. The electors are the repository of all political power. Through them constitutions are established, and through their chosen representatives laws are made, executed and administered. It seems to me, therefore, under the Constitution of this

---

[1] Const. art. vi, § 27.　　　　[2] Const. art. vi, § 28.

State, that the persons selected as jurors must possess the qualification, existing at the time it was adopted, of being electors.

It does not follow, however, that all electors are qualified to sit as jurors. The statute of 1846, in force at the time the Constitution was adopted, required that the selection should be made, and those only taken " who are in possession of their natural faculties, and not infirm or decrepit; of fair character, of approved integrity, of sound judgment, and well informed, and free from all legal exceptions." [1] The object was to insure an intelligent and impartial jury. I have no doubt of the authority of the Legislature to impose these or additional qualifications to secure such object. In 1861 the Legislature amended the Act of 1846 by adding to the qualifications of jurors to be selected, that they should be conversant with the English language, and who have not made, and in whose behalf there has not been made, to the selecting officers, any application to be selected and returned as jurors. Act No. 25. In 1867 the Legislature enacted " that no person shall be qualified to be or become one of a panel of jurors, in any circuit court or court of record, in Wayne county, who within one year prior thereto, has been or acted as a member of a panel of jurors, whether summoned on the original panel, or added thereto as talesman, in the same court; and it shall be the duty of the circuit or presiding judge, to discharge any such person if summoned as a juror, who within one year has been a member of a panel of jurors in said court, and it shall be a just cause of challenge to any juror in any cause, over and above all other challenges allowed by law, that he has been within a year a member of a panel of jurors, in said court. Act No. 129. In 1869 this Act was amended so as to allow justices of the peace of the county of Wayne to become jurors, notwithstanding they had been members of a panel of jurors within a year (Act No. 48); and Act No. 62 of the Laws of 1869 extended the provisions of the Act of 1867 to all courts of record in the State.

---

[1] Rev. Stat. 1846, ch. 103, sec. 9.

By Act No. 117, Sess. L. 1873, the qualifications of jurors in criminal cases were further enlarged by providing that the previous formation or expression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or impression not being positive in its character, or not being based on positive knowledge of the facts in the case, shall not be sufficient ground of challenge for principal cause to any person who is otherwise legally qualified to serve as a juror upon the trial of such action, provided he shall declare upon oath that he verily believes that he can render a just and impartial verdict according to the evidence submitted to the jury on such trial; and further, that the judge shall be satisfied that he does not entertain such a present opinion as would influence his verdict.

In 1877 a change as to the manner of drawing jurors was made,[1] and in 1879 it was enacted that the assessors and township clerk of each township, and the assessors and alderman of each ward in any city, shall, at the time appointed by law for said assessors to review their assessment rolls in each year, make a list of persons to serve as petit jurors, and a list of persons to serve as grand jurors, the ensuing year,[2] which was changed again in 1881 so as to require the supervisor and township clerk of each township, and the supervisor or assessors, as the case may be, and alderman of each ward or assessment district in any city, at the time appointed by law for the review of the assessment roll for each year, to make a list of persons to serve as petit and a list to serve as grand jurors for the ensuing year, but in no case shall they put one of their own number upon the list. Act No. 65. Subsequently, at the same session, the law in question was passed, and was amended in 1883.[3]

It will be seen from this review that the Legislature has frequently, and I think with entire propriety, legislated not

---

[1] Act 125 of 1877.      [2] Act 41 of 1879.      [3] Act 91 of 1883.

only upon the subject of qualifications of jurors, but as to the persons or officers by whom the list of jurors should be selected. The right of trial by jury remains as it existed at the time of the adoption of the Constitution and was known to the previous jurisprudence of this State. The incidents of such trial, which were so known and recognized, which are essential to the enjoyment of the right, whether they pertain to the method of obtaining or to the persons who compose the jury, cannot be impaired or destroyed without violating this constitutional provision.

It was held in *Hill v. People* 16 Mich. 351, that the jury, in criminal cases, must consist of twelve, and that all must have the qualifications of being electors. In this case, one alien was embraced in the panel, and the conviction was set aside. In *People v. Marion* 29 Mich. 31, it was said that "it is one of the most essential features of the right of trial by jury at common law, that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit." In *Underwood v. People* 32 Mich. 1, it was held that "the right of trial by jury is secured by constitutional provisions, and it would not be competent to make any substantial changes in its character;" and in *Swart v. Kimball* 43 Mich. 448, Mr. Justice Cooley, in expressing the opinion of the Court upon this provision of the Constitution, said: "The right is to *remain*. What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. The right is not described here; it is not said what shall be its incidents; it is mentioned as something well known and understood under a particular name; and by implication at least, even a waiver of its advantages are forbidden. If the accused himself cannot waive them, plainly the Legislature cannot take them away. The next section of the Constitution repeats the guaranty of this method of trial 'in every criminal prosecution,' and nothing is better settled on the authorities than that the Legislature

cannot take away a single one of its substantial and beneficial incidents."

These citations are sufficient to show that all the essential incidents of the trial by jury, as it existed at the time of the adoption of our Constitution, are protected by this guaranty.

The question under consideration does not, however, have reference to the trial, but precedes it, and appertains to the selection of the jury. In England the selection has usually been made by the sheriff from the class. of persons whose qualifications have been prescribed by statute; and that officer, under our statute, performs that duty in cases where a special jury is allowed. The manner of the selection, and the person or persons by whom the selection was to be made. was often the subject of change by the legislative power, both in England and America, but it was never supposed that this was an infringement of the right of jury trial, so long as the selection was made by an impartial person, acting free from bias or corruption. A challenge to the array, which is one of the essential incidents of jury trial, has been regarded as a sufficient safeguard against the partiality or default of the officer who selected or summoned the panel; and I have no doubt that this challenge would lie to the action of the board of jury commissioners appointed under this act, where it would at common law to the action of the sheriff or his subordinate officers in selecting or summoning a jury.

It is claimed that this law violates the principle of local self-government underlying the Constitution, and recognized by that instrument; that the functions to be performed by these officers are local in their nature, and pertain to the local administration of the affairs of the municipality. From what has been said it is quite apparent that it has been the uniform practice of the Legislature to cast the duty of selecting jurors to serve in courts of record upon local officers of the townships and wards. This has been so in this State since 1827, and substantially the same officers have been required to perform that duty; and since the selection is required to be made from the assessment rolls of the township and ward,

there is a manifest propriety in providing that the assessing officer shall be one of the persons to make the selection. Presumably, he comes in contact with and is personally acquainted with the qualifications of the persons named on his roll, and is better qualified to discharge the duty than any other person could well be. The township clerk and aldermen are also local officers, whose acquaintance with the electors of their respective towns and wards may be presumed. The office of assessor is not a constitutional one. The Legislature may create or abolish the office at pleasure. The offices of supervisor and township clerk are named in that instrument, but it expressly says that their powers and duties shall be prescribed by law. But the question arises, is the selection of jurors a duty that can be said to belong to the local officers named, as matter of right? Has the duty been exercised so long in connection with the duties of those offices that its exercise is implied in the name? I think not. Neither do I think the duties involved are of a local administrative character. In selecting a jury, whether the duty is performed by the supervisor and town clerk, or by the assessor and alderman, or again by the board of jury commissioners, the act does not involve the administration of local affairs. It requires a knowledge of men, and the exercise of discretion and discrimination, but it is not of a judicial nature. It determines no one's rights. In the record before us the question is presented as one purely connected with the administration of the criminal laws of the State. And upon this subject Mr. Justice Christiancy, in *Hill v. People* at page 357, says: "The true theory, we think, is that the people, in their political or sovereign capacity, assume to provide by law the proper tribunals and modes of trial for offenses, without consulting the wishes of the defendant as such; and upon them, therefore, devolves the responsibility, not only of enacting such laws, but of carrying them into effect by furnishing the tribunals, the panels of jurors, and other safeguards for his trial, in accordance with the Constitution, which secures his rights."

The enforcement of criminal law concerns the State at

large. It is not confined to one locality more than another. The fact that the State has been accustomed to confide to local agencies as the instruments of its enforcement does not deprive the State of the obligation to try offenders, or make such trial· subject to local control. What was said by Mr. Justice Campbell in *People v Hurlbut* 24 Mich. 83, is perti-'nent to the question under consideration, namely: "The preservation of the peace has always been regarded, both in England and in America, as one of the most important pre- rogatives of the state. It is not the peace of the city or county, but the peace of the king or state, that is violated by crimes and disorders. The prosecution is on behalf of the state. Our Constitution confides the judicial power to no courts but those organized under the direct sanction and regulation of State law. No portion of this power can be delegated to cities. Courts may be established to act in municipalities, and their judges may be elected by the citi- zens, but their powers must all be defined by State legisla- tion, which authorizes and establishes them. The number and qualification of jurors are under State control."

In the exercise of this prerogative it seems to me that it is perfectly competent for the Legislature to appoint a board of officers, and invest them with the authority to select from the whole body of persons qualified to serve as jurors a suffi- cient number to form a panel for the trial of offenses against the laws of the State. Nor does it make any difference that the expense of the board is to be paid from the treasury of the county of Wayne. The Legislature may have considered this a just apportionment of the public burthen for this county to bear; and there is no more legal objection to it than there is to paying juries from the county treasury. *People v. Board of County Auditors* 13 Mich. 233. If any inference is to be drawn from the payment of the expenses by the county, it would be against the claim of the board being local officers, and would rather point to their being considered as State agencies. When the nature of their functions is determined, and the class of agencies to which they belong resolved, the question is solved so far as it

affects constitutional rights. Their functions are not judicial, but ministerial, involving a certain amount of discretion, it is true — but nearly all ministerial acts involve the exercise of discretion — and they belong to the class of State agencies employed in the administration of justice. It is competent for the Legislature, acting for the State, to discontinue the use of local organization and officers in executing the duties devolved upon it, and create new offices or agencies for that purpose, and to elect or appoint persons to fill such offices in such manner as to them shall seem best.

I find no constitutional objection to the law in question, and the Recorder's Court is advised to proceed to judgment.

The other Justices concurred.