# JOSEPHINE A. POWER, Respondent, v. FRED WILLIAMS, Appellant.

## (205 N. W. 9.)

**Evidence — pleading competent evidence as against pleader on showing that admission was incorporated in pleading with knowledge and consent of party.**

1. A pleading, otherwise admissible, is competent evidence as against the pleader, of the fact admitted, in a case other than the one in which it was filed, and in behalf of the pleader's adversary in the former action, when it appears that the admission was incorporated in the pleading with the knowledge and consent of the party.

**Evidence — admission against interest made in pleadings are not conclusive against pleader.**

2. When an admission is relied on as evidence and not as a matter of pleading which excuses the adversary from offering proof of the fact admitted, and there is no question of estoppel or otherwise, admissions against interest made in pleadings are not conclusive against the pleader and it is proper to instruct the jury to that effect.

**Jury — amendments to Federal Constitution securing jury trial held to apply in Territory of Dakota.**

3. The sixth and seventh amendments to the Constitution of the United States, securing trial by jury in civil and criminal cases, extended to and applied in the Territory of Dakota.

**Jury — trial jury in Dakota Territory in both civil and criminal cases consisted of twelve men; requirement of Federal Constitution of jury trial held to require verdict by concurrence of all twelve jurors.**

4. It was the settled law in the territory, by virtue of the sixth and seventh amendments to the Federal Constitution, that in both civil and criminal cases the trial jury consisted of twelve men with the indispensable requirement of unanimity in the verdict. Unanimity was one of the peculiar and essential features of trial by jury at common law and the constitutional right of trial by jury in civil cases was secured by the seventh amendment to the Federal Constitution against encroachment in the Territory of Dakota by attempting to authorize a verdict without the concurrence therein of all twelve jurors.

Note.— (1, 2) Admissibility as evidence of pleadings, see annotation in 14 A.L.R. 22; 21 R. C. L. 607; 4 R. C. L. Supp. 1423.

(4–7) Constitutionality of verdict by less than all jurors, see annotation in L.R.A.1917A, 91; 16 R. C. L. 221–224; 3 R. C. L. Supp. 551; 4 R. C. L. Supp. 1048; 5 R. C. L. Supp. 875.

**Jury — constitutional requirement of jury trial held to preserve historical jury of twelve persons with all essential elements, unless contrary purpose clearly appears.**

5. The provisions of the Bill of Rights in the Constitution of North Dakota, securing trial by jury, do not extend the right; they only secure it in the cases in which it was a matter of right before, and in doing this, they preserve the historical jury of twelve persons with all its essential incidents, unless a contrary purpose clearly appears.

**Jury — right of trial jury, secured by Constitution, includes unanimous concurrence of twelve jurors in verdict.**

6. The right of trial by jury, as secured in § 7 of the Bill of Rights, is the right as it existed at common law and under the Federal Constitution in Dakota Territory, including, as one of its essential incidents, the unanimous concurrence of twelve jurors in the verdict.

**Jury — statute purporting to dispense with requirement on unanimity in verdicts in civil cases held void.**

7. Chapter 333, Sess. Laws, 1923, purporting to dispense with the requirement of unanimity in verdicts in civil cases, contravenes § 7 of the Bill of Rights of the State Constitution and, is therefore, void.

Opinion filed August 4, 1925.

Constitutional Law, 12 C. J. § 63 p. 710 n. 59, 60, 61, 62. Evidence, 22 C. J. § 374, p. 333 n. 22; § 506 p. 423 n. 19. Juries, 35 C. J. § 14 p. 148 n. 9; § 20 p. 152 n. 56; § 159 p. 232 n. 26; § 162 p. 234 n. 55, 58.

Appeal from District Court of Cass County, North Dakota, *Cole, J.* Reversed and new trial ordered.

*Shure & Murphy,* for appellant.

It is the defendant's contention that the words "trial by jury," as used in such constitutional provision meant a trial by a jury as known to the common law in the Territory of Dakota at the time of its admission to the Union as a state. Berry v. Truax, 13 N. D. 137; Smith v. Kunert, 17 N. D. 120; Grigsby v. Larson, 124 N. W. 856; McKenny v. McKenzie, 127 N. W. 597; Con. Min. Co. v. Struthers, 111 Pac. 155; State ex rel. Jackson v. Kenner, 60 Pac. 589; People v. Martin, 21 A.L.R. 1403, 205 Pac. 121; Re Mana, 192 Pac. 986; Cassidy v. Sullivan, 28 Pac. 234; Ex parte Wong, 39 Pac. 627; Bathwell v. R. Co. 215 Mass. 467, L.R.A.1917F, 167, 102 N. E. 665, Ann. Cas. 1914D, 275; Moot v. Moot, 214 N. Y. 204, 108 N. E. 424.

Section I of an act of Congress, approved April 7, 1874, being § 34 of the Organic Law, Compiled Laws 1887, provided that no party has been or shall be deprived of the right of trial by jury in cases cognizable at common law. As construing these sections, see American Pub. Co. v. Fisher, 166 U. S. 464, 41 L. ed. 1079, 17 Sup. Ct. Rep. 618; Walker v. N. M. R. Co. 165 U. S. 593, 41 L. ed. 837.

Due process of law in a state is regulated by the law of the state. Walker v. Sauvinet, 92 U. S. 90, 23 L. ed. 678; Maxwell v. Dowe, 176 U. S. 581, 44 L. ed. 597.

Whatever else may be asserted about the definition of the term "due process of law," all authorities agree that it inhibits the taking of one man's property and giving it to another contrary to settled usages and modes of procedure. Ocha v. Hernandez, 230 U. S. 139, 57 L. ed. 1437.

The constitutional provision that the right of trial by jury shall remain inviolate means that it shall not be destroyed or annulled by legislation nor so hampered or restricted as to make the provisions a nullity. 16 R. C. L. 196; Grim v. Norris, 19 Cal. 140, 79 Am. Dec. 206.

*Barnett & Richardson* and *Lyman N. Miller*, for respondent.

The right of trial by jury has been constantly modified, and changed, during its entire history. In Canada, still under the common law, a unanimous verdict is no longer necessary. Robertson v. McMeans, 1 Manitoba L. R. 348.

JOHNSON, J. Plaintiff brings this action to recover the balance of the purchase price of some land alleged to have been sold to the defendant. She alleges, in the complaint, that she sold the land to defendant, on Dec. 24, 1922, for $12,000; that the defendant agreed to pay for the property by assuming two encumbrances against it of $4,000, each, and interest, by surrendering a promissory note executed by her in the sum of $1,092, and by paying her $2,168, in cash. It is then alleged that "plaintiff has transferred the . . . land, at the request of the defendant, to the Arthur Mercantile Company;" and that he has failed and refused to deliver the note and pay the cash. She asks judgment accordingly.

Defendant answered, alleging that the land was in fact sold to the

Arthur Mercantile Company and for no consideration other than the assumption of the encumbrances and the return of a note executed to the Pingree State Bank in the sum of $1,092.24, and interest amounting to $95.04. Otherwise, the answer is a general denial.

The trial resulted in a verdict for plaintiff for $1,839.47, and costs. Two jurors refused to concur. Defendant appeals from the judgment and from an order denying a motion for a new trial.

Aside from the attack on the constitutionality of the statute, chap. 333, Sess. Laws, 1923, authorizing ten jurors to return a verdict if, after a deliberation of twelve hours, the twelve cannot agree, the defendant assigns errors based upon the instructions and upon rulings in admitting or excluding evidence. It is also contended that the undisputed testimony shows that a certain option contract was abandoned and that in fact the land was sold to the company and not to the defendant.

On January 17, 1922, plaintiff and defendant entered into an option agreement, whereby defendant had the right to buy or sell plaintiff's land for $12,000, payment to be made in the manner described in the complaint, with the exception that the return of the note therein referred to was not stipulated. It is conceded that defendant was under no obligation to buy—that the contract was an option agreement. No sale resulted and nothing appears to have been done until Dec. 13, 1922, when plaintiff and defendant met in the store operated by the Arthur Mercantile Company, and in which the defendant was the principal stockholder. At this point the controversy as to the facts really begins. Plaintiff's version of what happened in the store and afterwards in the bank, to which the parties repaired, is that defendant agreed "to take over the place," and that he said nothing about any change in the terms of the option agreement until after she had signed the deed. She says she did not know that the grantee in the deed was the Mercantile company. Plaintiff says that the purchase price, or consideration, stipulated in the option agreement, was never changed and that she "did'nt agree to any other consideration"—that the "consideration was to be twelve thousand dollars, less the mortgages and the interest."

The defendant testified that the consideration agreed to be paid by the grantee in the deed was the assumption of the mortgages and the

return of the note; that there was no agreement to pay any cash. He denies the plaintiff's testimony in this respect and is corroborated by witnesses who say they heard the conversation, or that the terms were stated to them by the parties. There is, therefore, presented a conflict in the testimony on the question of the consideration which the verdict resolves in favor of the plaintiff.

Error is assigned in the ruling of the court in admitting Ex. 1, the option agreement, and instructions with reference thereto. It is the plaintiff's contention that this instrument evidenced the terms of the sale, with the exception of the return of the note, and that it was admissible for the purpose of showing the consideration. The testimony of the plaintiff is fairly susceptible to the construction that when the sale took place in December, 1922, it was upon the consideration stated in the option. There was no error committed in admitting the exhibit. The instructions upon this branch of the case are entirely fair to the defendant and technically correct. No useful purpose would be served in setting them forth in detail. The court told the jury, in this connection, that Ex. 1 was evidence in the case, to be considered with other evidence in making up the verdict; that if the preponderance of the evidence was to the effect that the sale was made on the terms stated in the option contract and payment had not been made accordingly, the verdict should be for plaintiff if, on the contrary, they were satisfied that the sale was made on other and different "terms, conditions and price" the verdict must be for the defendant. Defendant's assignments on this point are without merit. There is no such variance between the pleadings and the proof as defendant claims. Obviously, plaintiff sues on the contract of sale; so far as it was not modified by the parties, the option agreement was competent and proper evidence of the terms on which the sale was made.

Defendant made some requests for instructions, which were refused. The following is a fair specimen:

"Where a party to an action makes solemn admissions against his interest in the pleadings, they should be treated as admitted facts, and he will not be heard to question the correctness thereof, and each party in an action is, in that case, conclusively bound by those admissions which they expressly make in the pleadings."

The court charged as follows:

"I charge you, members of the jury, that while the complaint has been offered in evidence in this case and admitted without objection, the complaint is verified by the attorney in the case and not by the plaintiff, and therefore the complaint itself would not be binding upon the plaintiff, as matters of admitted fact in the case. In other words, that is a statement of the attorney, verified by him, from information gained from his client before making the verified complaint."

The plaintiff testified that she did not know that the Arthur Mercantile Company was the grantee in the instrument; in her complaint she alleged that the name of this concern as grantee was inserted in the deed at the request of defendant Williams. The complaint was verified by her counsel. It will be recalled that the option contract obligated the plaintiff to convey the land to the defendant "or any person or persons he may name." The defendant introduced the complaint for the purpose of showing that plaintiff had therein made an admission on this point contrary to her testimony.

It has been held in this state that an admission in a pleading, otherwise admissible, is competent evidence as against the pleader, of the fact admitted, in a case other than that in which it was filed, and in behalf of the pleader's adversary in the former action, where it appears that the admission is incorporated in the pleading with the knowledge and consent of the party. Horton v. Emerson, 30 N. D. 258, 274, 152 N. W. 529; and see Union Nat. Bank v. Western Bldg. Co. 44 N. D. 336, 341, 175 N. W. 678. The alleged admission is relied on as evidence, and not as a matter of pleading which excuses the defendant from offering evidence of the fact admitted. In such circumstances "where no consideration other than that of evidence enters into the question, admissions against interest are not conclusive under any circumstances or in any situation." 14 A.L.R. 75, and cases cited in an extensive note on Admissions in Pleadings, beginning on p. 22. What the court says is merely that the admission in the complaint is not conclusive as an "admitted fact." This is correct under all the authorities. There was no error in the charge given or in refusing the requests for instructions.

Other errors are assigned, but they are so obviously without merit that they need not be considered.

This brings us to a consideration of the constitutionality of chapter

333, Sess. Laws, 1923. There being no merit in any of the appellant's other assignments of errors, it becomes our duty to decide whether the statute authorizing ten of twelve jurors to return a verdict in civil cases contravenes any provision in the State Constitution. The appellant asserts that the statute is violative of §§ 7 and 13 of the state Constitution, and of the fourteenth amendment to the Constitution of the United States. The chapter, so far as material, is as follows:

"Sec. 1. In all civil actions or proceedings in any court of record in this state after twelve hours' deliberation the agreement of five-sixths of any jury therein shall be a sufficient and valid verdict; the deliberation of the jury shall be deemed to have commenced when the officer taking charge of the jury has been sworn, and the clerk shall enter such time in his records."

Section 7 of the state Constitution provides that "The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law."

It is the contention of the defendant that the phrase "trial by jury," as used in § 7, contemplates a jury of twelve persons, with the incident of unanimity in returning a verdict.

In Barry v. Truax, 13 N. D. 131, 65 L.R.A. 762, 112 Am. St. Rep. 662, 99 N. W. 769, 3 Ann. Cas. 191, this court, after an exhaustive research and the most painstaking consideration, came to the conclusion that the "trial by jury" which the framers of the constitution intended should remain inviolate was the trial by jury as it existed at and prior to the adoption of § 7 of the Bill of Rights as a part of the constitution. It was there said, among other things:

"The constitution refers to 'the right of trial by jury' as a right well known and commonly understood at the time of its adoption, and it is the right so understood which is secured by it. . . . It is entirely clear, therefore, that the right of trial by jury, which is secured by the constitution, is the right of trial by jury with which the people who adopted it were familiar, and that was the right which had obtained a fixed meaning in the criminal jurisprudence of the territory, as defined by the statutes which existed prior to and at the time of the adoption of the constitution."

In Smith v. Kundert, 17 N. D. 120, 115 N. W. 76, this conclusion was reaffirmed by a unanimous decision.

On March 2, 1861, President Buchanan approved an act providing a "temporary government for the Territory of Dakota." It is there provided that the Constitution of the United States shall extend to and apply within the territory. Sec. 16, The sixth and seventh amendments, therefore, extended to the Territory, and the sixth guaranteed to all persons accused of crime, alleged to have been committed in the territory, a trial by a jury of twelve men. In criminal cases the right of jury trial according to the course of the common law, with the requirement of unanimity, was secured by the Federal Constitution. Thompson v. Utah, 170 U. S. 343, 42 L. ed. 1061, 18 Sup. Ct. Rep. 620. In that case it is said to be settled beyond controversy that the provisions of the Federal Constitution relating to the right of trial by jury in suits at common law, apply to the territories, citing Webster v. Reid, 11 How. 437, 457, 13 L. ed. 761, 770. In Springville v. Thomas, 166 U. S. 707, 41 L. ed. 1172, 17 Sup. Ct. Rep. 717, the court had under consideration an act of the legislature of Utah Territory, attempting to dispense with the requirement of unanimity. In holding that the legislature had no power to enact such a law, the court say: "In our opinion the seventh amendment secured unanimity in finding a verdict as an essential feature of trial by jury in common law cases, and the act of Congress could not impart the power to change the constitutional rule, and could not be treated as attempting to do so." We are, therefore, entirely outside the domain of controversy when we say that it was the settled law in the territory, by virtue of the sixth and seventh amendments to the Federal Constitution, that in both civil and criminal cases the trial jury consisted of twelve men with the indispensable requirement of unanimity in the verdict. In other words, unanimity was one of the peculiar and essential features of trial by jury at common law and the constitutional right of trial by jury in civil cases was secured by the seventh amendment to the Federal Constitution against encroachment in the Territory of Dakota by attempting to authorize a verdict without the concurrence therein of all twelve jurors. See also American Pub. Co. v. Fisher, 166 U. S. 466, 41 L. ed. 1080, 17 Sup. Ct. Rep. 618. In that case the court said:

"Now unanimity was one of the peculiar and essential features of trial by jury at the common law. No authorities are needed to sustain this proposition. Whatever may be true as to legislation which changes any mere details of a jury trial, it is clear that the statute which destroys this substantial and essential feature thereof is one abridging the right. It follows, therefore, that the court erred in receiving a verdict returned by only nine jurors, the others not concurring."

What was the situation in Dakota Territory, presumably known to the members of the Constitutional Convention and to the people when the constitution was adopted, with respect to trial by jury? This is a legitimate inquiry since we are called upon to determine what sort of a "trial by jury" "shall . . . remain inviolate" under § 7 of the Bill of Rights. An answer to the question may tend to throw some light on the intention of the people who adopted the instrument and the true purpose of the clause. See People v. Harding, 53 Mich. 48, 51 Am. Rep. 95, 18 N. W. 555; 12 C. J. 710.

At the first session of the legislature of Dakota Territory which convened at Yankton on March 17, 1862, a Code of Civil Procedure was adopted. Sess. Laws, 1862, chap. 8. In articles I. and II. of Title IX. provision is made for trial by jury; §§ 268, 270, and 271 distinctly provide that if any juror disagree, no valid verdict can be rendered. The same idea appears in the Code of 1877. § 258. Indeed, so thoroughly ingrained was the notion that the jury must unanimously agree to the verdict, that the idea of unanimity appears more by assumption than by direct statement. We may postulate with further proof or discussion that in courts of record, the jury of territorial days consisted of twelve men who must agree in order to return a verdict on which a valid judgment could be entered. We must also assume that this fact was well known to the members of the Constitutional Convention and to the people.

When § 7 of the Bill of Rights was proposed in the Constitutional Convention, a member offered an amendment to the folio as introduced to permit three fourths of the members of a jury in civil cases to return a valid verdict. In the discussion that followed, the late judge Carland opposed the amendment as a fundamental departure from "trial by jury" as known in the territory and to the common law. It

thus appears that the framers of the Constitution had before them the alternative of majority verdicts in civil cases and rejected the proposal. The convention did, in another respect, recognize the existing practice in the territory. In § 7, it is provided that in courts not of record, a jury may consist of less than twelve men. In chapter 49, Sess. Laws, 1862, § 61, it was provided that in civil trials before a justice of the peace a jury should consist of six men, or less, if the parties agreed. In other words, the framers of this instrument not only adopted the rule which had been recognized in the territory for over twenty-five years, but by saying when a jury might consist of less than twelve men, excluded all other cases from the exception to the rule.

Such, then, was the situation at and prior to the adoption of the Constitution. Does § 7 indicate a clear purpose to depart from the principle of unanimity? Is the language of § 7 of the Bill of Rights such as to require or warrant the construction that the people who adopted the Constitution intended to give the legislature the power to modify the jury system, as known to the common law and as put in force in the Territory of Dakota by the Federal Constitution, by striking from it the peculiar and essential feature of unanimous concurrence of twelve jurors in a verdict? Counsel for the respondent seeks to differentiate § 7 from analogous provisions in the Constitutions of other states. He argues with able and ingenious originality that it is the intention of this section that "it is for the legislature to pass such legislative enactments, as, *in the fair opinion of the legislature will properly secure the* right of trial by jury." (Emphasized by counsel.) Reduced to its simplest terms the contention is that apart from the abstract mandate to the legislature to secure trial by jury, there is no right in that regard, in civil or criminal causes, except as recognized or defined by the legislature; and, necessarily, what one legislature may do in this matter, as in other matters, may be modified by the next. As a matter of individual right or constitutional law, no distinction, in this respect, can be drawn between civil and criminal cases. Section seven is the only place where the right of jury trial is considered in the State Constitution. We venture the suggestion that it would seem a somewhat "advanced" doctrine to the large majority of the legal profession, if not to the public at large, if the claim were recognized that a man could be sent to the penitentiary for life, notwithstanding

a provision like § 7 in the Bill of Rights, by the vote of seven of twelve jurors. Yet, it is difficult to see why the legislature could not authorize a majority verdict in criminal as well as in civil cases, if the argument urged be sound. If this innovation upon trial by jury in civil cases, be sound and "progressive," as the argument runs, that is, if sounder verdicts result, why, it may be asked, would not sounder verdicts result in criminal cases? The objection that one juror may obstruct justice, if unqualifiedly meritorious, must apply equally to civil and criminal causes. If, as contended, the matter be entirely in the "fair opinion of the legislature," manifestly that "fair opinion" may conclude that a five sixths or a majority verdict in criminal cases adequately secures "trial by jury . . . to all." We are satisfied that such a result was never intended when the constitution was adopted.

A constitutional mandate to the legislative branch of the government is, in practice, no more than a grant of power. We have, as an example of the efficacy of such a provision, the fact that, notwithstanding § 127 of the constitution has, for over a quarter of a century, contained a standing command that "the legislature shall by law establish an educational test as a qualification" for voting, the legislature has neglected to comply with the constitutional mandate.

The contention is unsound. The language of the section is "trial by jury shall be secured to all, and *remain inviolate.*" Counsel wholly ignores the emphasized portion. What was to *"remain inviolate"* and against action by whom? Clearly the right of jury trial with all its essential incidents as secured in the Territory of Dakota, under the Federal Constitution, and it was made secure against action, by any future legislature, the effect of which might be to take away any of its essential incidents. "The constitutional provisions securing trial by jury do not extend the right; they only secure it in the cases in which it was a matter of right before. But in doing this, they preserve the historical jury of twelve men with all its incidents, *unless a contrary purpose clearly appears.*" Cooley, Const. Lim. 589. (Emphasis is ours.)

We think it must be regarded as settled law that the right to a jury trial, secured by § 7 of the Bill of Rights, is the right as it existed at common law and under the Federal Constitution in Dakota Territory and that one of the incidents thereof was the requirement of unanimity.

We see no escape from the conclusion that § 7 was deliberately adopted for the purpose, among others, of securing for the future, until the fundamental law should be changed, that no man should be deprived of his property, his liberty or his life, in cases where a jury trial was had in courts of record, save upon the unanimous verdict of twelve persons; and that chapter 333, Sess. Laws 1923, is violative of the Bill of Rights and therefore void. We so hold. See Barry v. Truax. 13 N. D. 131, 65 L.R.A. 762, 112 Am. St. Rep. 662, 99 N. W. 769, 3 Ann. Cas. 191; notes in 24 L.R.A. 272; 43 L.R.A. 33; L.R.A.1917A, 91; L.R.A.1918D, 477; Opinion of Justices, 41 N. H. 550, Ann. Cas. 1916E, p. 500, where most of the authorities on the subject are collected.

It is strongly urged that the statute was enacted in response to a spirit of progress, and was prompted by a desire to improve the administration of justice. It may be conceded that such is the fact. Not all change is progress; nor is it true that "whatever is, is right." It is no hardship to require this purpose, in common with all other, whether good or bad, to be effectuated in a constitutional way. If the change be meritorious, it will doubtless commend itself to those who have the power to amend the fundamental law. We are not here concerned with the arguments advanced pro and con on this question. We are duly impressed by the suggestion that an obstinate juror may obstruct the administration of justice; also that a firm man may as frequently prevent an unjust verdict. It is likewise true that our government rests largely on the theory of majority rule. On the other hand, the political majority is prevented, by constitutional safeguards, from taking from the citizen his property, his liberty or his life; while these valued possessions of man may be at stake in a trial and a jury may be called upon to take them from him. In adopting the constitutional system of government we have agreed to the rule of the majority in matters of civil and political government, but under definite restrictions, devised for the protection of certain fundamental rights; we have not in this state so far agreed that we may be stripped of these rights except by a jury of twelve, and all concurring. Justice is not a matter of majorities. The majority as well as the minority

53 N. Dak.—5.

may be wrong. In any event, these are considerations that should be addressed to the power that may amend the constitution.

There must be a new trial. It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.