STOCKMEN'S INSURANCE AGENCY, INC.,
a corporation, Plaintiff and
Cross-Appellant,

v.

GUARANTEE RESERVE LIFE INSUR-
ANCE COMPANY OF HAMMOND, INDI-
ANA, a corporation, Defendant and Appel-
lant.

No. 8812.

Supreme Court of North Dakota.

Feb. 13, 1974.

As Amended on Denial of Rehearing
April 25, 1974.

Second Rehearing Denied May 16, 1974.

Harry J. Pearce, Pearce, Engebretson, Anderson, Schmidt, Pearce & Thames, Bismarck, for defendant and appellant.

William R. Mills, Bismarck, for plaintiff and cross-appellant.

DOUGLAS B. HEEN, District Judge.

The District Court sitting without a jury dismissed the plaintiff's cause of action based upon an alleged contract for a management fee, but awarded the plaintiff a money judgment and ordered an accounting on a second cause of action for commission on renewal insurance premiums. The defendant has appealed, and the plaintiff has cross-appealed, from that part of the judgment adverse to such party.

Incorporated in North Dakota in May 1959, Stockmen's Insurance Agency, Inc., (hereafter referred to as "Stockmen's"), intended as its stated objective to sell a million dollars of its own stock which would serve as a financial footing for a subsidiary stock insurance company dealing in life, health and accident insurance. Formation and licensing of the subsidiary required an initial outlay of some $275,000, and Stockmen's sales of its own stock were disappointing for by mid-April 1960 only $67,170 had been realized from this promotion.

Stockmen's, because of its seriously limited finances, temporarily abandoned its original plan for a stock insurance company. Following this reappraisal, and in need of a source of income, Stockmen's organized a subsidiary corporation, Stockmen's Health Mutual Insurance Company (hereafter called "Mutual"), organization of which required substantially less financing than the original stock venture and was more in keeping with Stockmen's available resources. The officers, directors and management personnel of Stockmen's and Mutual were identical. Stockmen's prospectus openly acknowledged that although a mutual would not return dividend income, nevertheless, Mutual would serve as an income-producing vehicle for Stockmen's, the parent corporation. This was to be accomplished, according to Stockmen's 1959 Prospectus, by a contemplated agreement under which Stockmen's would in effect be Mutual's general agent and agency director and would manage its affairs and finances. Remuneration for these services, however was not disclosed in this prospectus.

Such an executed management and general agency contract was not produced during the trial of this case. Whether such an agreement existed and, if it did, its terms, conditions and provisions, proved to be a critical issue in this case.

Stockmen's minutes of the May 10, 1960, special meeting disclose only that its stockholders approved formation of a subsidiary mutual insurance company as an expedient source of income for Stockmen's and as outlined in the notice of the special meeting, including the proposed plan's further refinement calling "for an exclusive agency contract between the mutual company and Stockmen's . . . which company will also manage the affairs and finances of the mutual company." Following stockholder approval of this proposal, it was unanimously resolved

That the officers of Stockmen's . . . prepare the necessary amendment to

the registration of the company with the States Securities Commission to effectuate the plan set forth in the notice of meeting and to proceed at once to make the necessary loan to the Mutual company to get the Mutual company in operation.

Apparently Stockmen's directors had anticipated the favorable action by its stockholders on May 10, 1960, of the plan to form the mutual insurance company because Mutual then already was organized and had received its charter on May 3, 1960. Two days later, Mutual's incorporators and directors held their first meeting and Mutual's actual operation commenced on June 7, 1960.

Mutual's sales force was recruited by Robert Bryson who held the title of agency director. The evidence is far from clear as to whether Bryson was hired by Stockmen's or by Mutual, but in any event Bryson organized Mutual's sales structure in North Dakota. Seven general agencies (Bryson's testimony denotes the seven as such) were set up in various cities. Stockmen's Prospectus of July 1, 1962, noted that the seven agencies "possess those powers entrusted to a general agency . . ." Over a hundred writing agents were connected with the seven agencies. In enlisting sales personnel, it was understood by the agents, Mutual, and by Stockmen's—there were no written agency contracts—that general agents were to receive 5% and the writing agent 10% of all renewal premiums paid on Mutual policies written by or through such agent. An additional unwritten inducement provided that if an agent terminated sales representation for Mutual, thereafter he would continue to receive similar commission for the number of years the agent had sold Mutual, which if five years or more, would vest the agent's right to renewal commission for his lifetime. As stated, no written agency contracts, general or selling, embodying these compensation arrangements were executed. With this understanding,

the sales force began solicitation and sale of Mutual policies.

Stockmen's somber financial picture brightened somewhat and persisting in its original plan, Stockmen's in December 1961 organized Stockmen's Reserve Life Insurance Company (referred to hereafter as "Reserve"), and caused it to be licensed for North Dakota operation. Reserve, then, was Stockmen's long desired subsidiary stock insurance company, and Reserve's board of directors interlocked with those of Mutual and Stockmen's.

In June 1962, Reserve commenced phasing out Mutual by assumption of the latter's insurance contracts. From the time of its organization and licensing, and during the period of acquisition mentioned above, Reserve sold its own policies using the sales structure set up for Mutual, sales personnel continuing to operate without written agency contracts but under the same understanding of commission schedules as existed with Mutual.

Almost from its beginning, Reserve was plagued by financial difficulties. By late summer 1962, Reserve's unpaid claims under policy coverage, the claims being in an amount of some $180,000, nearly equaled its legal reserve of $200,000 on deposit with the State Insurance Commissioner. Because of this fiscal imbalance, Reserve anticipated imminent issuance by the Commissioner of an order enjoining it from further policy sales until all outstanding claims were paid and its legal reserve, if resort to this fund was required for payment of claims, again was built up to the required $200,000.

At this juncture, Reserve urgently needing to extricate itself from its financial dilemma, did so by selling its book of business to Guarantee Reserve Life Insurance Company of Hammond, Indiana (denoted hereafter as "Guarantee"). Reserve's policy liability, which included policies orginally issued by Mutual, was transferred to Guarantee by a written Contract of Rein-

surance and Assumption, dated July 27, 1963, executed by Reserve and Guarantee as principals, and ratified by Mutual and Stockmen's, the latter being the plaintiff in this action.

Under the terms of the assumption contract, Reserve was relieved of, and Guarantee assumed, all liability arising under policies issued by Reserve or by it accepted in acquiring Mutual's policies.

In demanding an accounting and a money judgment from the defendant, the complaint of the plaintiff, Stockmen's, in effect pleads two causes of action, both of which are concerned with liability assumed by defendant Guarantee under the terms of the Contract of Reinsurance and Assumption. It is the plaintiff's claim that under the alleged Stockmen's-Mutual Agency Contract, Mutual was obligated to pay the plaintiff a 25% percent commission of its policy renewal income, such commission consisting of a 10% management fee, plus the 15% commission of the general and selling agent. The plaintiff further maintains that Reserve in converting Mutual's policies accepted these obligations and ensuing liabilities, which in turn were assumed by Guarantee by the terms of its Contract of Reinsurance and Assumption with Reserve.

Accordingly, the plaintiff asks first, as a separate cause of action, that it be awarded, and that defendant Guarantee pay, a management fee of 10% of all renewal premium income from policies originally written by the plaintiff's subsidiaries, Mutual and Reserve, and acquired by the defendant. Recovery under this cause of action was denied by the trial court.

For a second cause of action, the plaintiff alleges that defendant Guarantee is chargeable with and should pay plaintiff an additional 15% of all such renewal income, 10% of which would be allocated by the plaintiff to the writing agent with the plaintiff retaining the remaining 5% for acting as general agent at the time of the writing of the policy. Under this cause of action, the District Court ordered an accounting, and awarded the plaintiff a money judgment against the defendant. In doing so, the trial court found and concluded that Mutual and Reserve in the first instance were obligated to pay plaintiff Stockmen's both a general and selling agents' commission under the management and agency agreement allegedly existing between these subsidiary corporations ·and the plaintiff, and, that defendant Guarantee agreed to assume such obligations in the contract by which the defendant acquired and reinsured insurance policies originally issued by Mutual and Reserve.

In appealing, the defendant has detailed numerous specifications of error, the first of which to be considered is that the trial court erred in concluding that the defendant should pay the plaintiff a 15% general and writing agent's commission on all renewal income received from insurance policies acquired by the defendant from Reserve and in awarding a money judgment and decreeing an accounting. The defendant's challenge to the District Court's findings, conclusions and judgment is based upon the ground that the defendant was not so contractually obligated, either because such a contract did not exist or because the defendant did not assume the liabilities of such an agreement.

The plaintiff has cross-appealed specifying that the District Court erred in determining that the plaintiff is not entitled to a management fee on renewal income received by the defendant from those policies acquired from Reserve.

We reverse the District Court's finding and conclusion that the plaintiff is entitled to the 15% general and selling agents' commissions on all renewal income received by the defendant from insurance policies acquired from Reserve, and to an accounting; and affirm the trial court's dismissal of the plaintiff's cause of action based upon its claim to a management fee.

The right to an accounting in all cases is a preliminary question which must

be answered in the affirmative before the actual accounting is ordered. A party is not entitled to an accounting simply because he demands that remedy. Rather, the party claiming the relief, the plaintiff in this instance, has the burden of proving its right to the accounting. If not so proved, there is no right to an accounting and the cause is to be dismissed. Stuber v. Taylor, 200 N.W.2d 276 (N.D.1972); Munce v. Munce, 77 S.D. 594, 96 N.W.2d 661 (1959); 1 C.J.S. Accounting § 39, pages 677–678, and § 40, pages 680–681; 1 Am.Jur.2d, Accounts & Accounting, Section 62, page 436.

■ An insurance agent's right to commission on renewal premiums depends upon the agent's contract of employment, and the agent has no right to such a commission unless the employment contract expressly and specifically provides therefor. Geiss v. Northern Insurance Agency, 153 N.W.2d 688 (N.D.1967).

In this case, there is no written agency contract purporting to appoint or constitute the plaintiff as agent for defendant Guarantee; nor did these parties execute any writing under which the plaintiff was to furnish management service to the defendant.

The Contract of Reinsurance and Assumption which is in question in this case and under which defendant Guarantee acquired Reserve's book of business, however, did touch upon the matter of agents' commissions, the agreement in part providing:

> 7. No liability, debt or obligation of (Reserve) is assumed by Guarantee . . . under this contract other than the liability to the policyholders, certificate holders and beneficiaries of the insurance policies hereinabove specifically assumed, *except as to commissions to agents, as provided for in connection with existing written contracts.* (Emphasis supplied).

The plaintiff, despite the absence of a written agency agreement directly with the defendant, contends that under the emphasized language of paragraph 7 of the assumption agreement, as it appears above, defendant Guarantee expressly and specifically agreed to pay the plaintiff a 15% agents' commission, thus satisfying the rule of *Geiss*. In arriving at this result, the plaintiff's reasoning and assumptions are as follows: that the Stockmen's-Mutual Agency Contract of May 10, 1960, was in writing and was an existing valid contract between Stockmen's and Mutual; that such agrement, under which the plaintiff claims to be entitled to agents' commissions and a management fee from Mutual, was accepted by Reserve; and that thereafter, the obligations of that agreement were assumed by the defendant by its execution of the July 27, 1963, written Contract of Reinsurance and Assumption through which it acquired Reserve's insurance policies, specifically by the above emphasized portion of paragraph 7 of that agreement.

The parties differ markedly in their interpretation of paragraph 7. This section, as the plaintiff sees it, means that defendant Guarantee assumed, and should pay, agents' commissions, whether fixed by oral or written agency agreement, as such were incurred by Reserve at the time of its issuance of those insurance policies later transferred to the defendant and which presently exist.

On the other hand, the defendant's interpretation of the section is that defendant Guarantee assumed, along with Reserve's insurance obligations, liability for only such agents' commissions as are provided for in existing written agency contracts. The defendant takes the position that since the plaintiff is unable to produce such a written agency contract whereby it served as Reserve's general agent at the time the defendant acquired Reserve's business, there is no liability owing by the defendant to the plaintiff for agents' commissions.

At this point, it must be borne in mind that this is not a proceeding instituted by the individual writing agents or the seven agents possessing the powers of general agents, but rather is an action by plaintiff Stockmen's, which claims that as Reserve's general agent it is entitled to the whole of agents' commissions from which it will remit to the other agents according to their status. Accordingly, and regardless of the interpretation accorded paragraph 7, whether that of the plaintiff or that of the defendant, the plaintiff, to recover agents' commissions and to justify its demand for an accounting, must do so in its own right as established by its own agency contract with Mutual, and must further prove that such agency contract was assumed by Reserve and then in turn by the defendant.

Contending that it was Mutual's general agent and that such appointment was in writing, the plaintiff at trial unable to produce such an executed written agency contract—the lack of which the plaintiff charges is the result of the defendant's machinations—resorted to secondary evidence to prove existence of the agency agreement. In this connection, the plaintiff places great reliance upon an unsigned copy of the May 10, 1960 Agency Contract, the named principals to which are the plaintiff and Mutual. This contract, which the plaintiff contends was assumed by Reserve and then by the defendant, among other things, provides:

(T)hat the (plaintiff) will be responsible for all fiscal affairs of the mutual, will handle all investments and furnish such management as may be necessary in the proper operation of the mutual.

(T)hat the (plaintiff) shall, at the end of each month's operation, receive, for the services rendered, ten percent (10%) of the gross premium and each renewal thereof, which said ten percent (10%) shall be exclusive of any salaries, *agent's commissions* and items generally considered as overhead. (Emphasis supplied.)

No officers of either plaintiff Stockmen's or Mutual during trial testified that they executed the Agency Contract for and on behalf of the principals nor was any other direct proof of the execution of the agreement offered.

The plaintiff, however, points to its 1961 Prospectus, issued to promote sales of its own stock, which set out that Stockmen's stockholders at a May 10, 1960, special meeting approved a twenty year agency and management contract with Mutual. This agreement, according to the prospectus, in part provided that Stockmen's would "handle all agency matters and provide all management necessary for the efficient operation of" Mutual and would be responsible for all Mutual's "fiscal affairs" and "investment matters." For these services, Stockmen's was to be paid, in the language of the prospectus, "10% of the gross premium and renewed income, which 10% shall be exclusive of an in addition to overhead items including salaries, agent's commissions and other operating expenses." This proof of the existence of such a management and agency contract is corroborated, so the plaintiff argues, by similar statements appearing in at least two of Stockmen's subsequently issued prospectuses.

As is readily discernible, the language of the 1961 Prospectus, illustrative of that employed in later prospectuses, is but a paraphrase of that of the Agency Contract, the pertinent sections of which are set forth above.

■ Examination and consideration of the two sections of the Agency Contract set forth above do not lend support to the plaintiff's claim of agency by written appointment. The reference to "agent's commissions" in these paragraphs has the function only of specifying the extent of the management fee for prescribed services to be furnished by the plaintiff to Mutual, its subsidiary. Under any interpretation, the wording of these paragraphs alone

would not serve to confer a general agency upon the plaintiff.

■ The plaintiff argues that under the evidence of this case, all of Mutual's and Reserve's agents had the same commission arrangement, which included commissions on renewals, and since this is established the plaintiff should prevail. This argument, however, assumes that the plaintiff was Mutual's general agent. There is no proof in this case of the manner in which the plaintiff acted as agent. In this respect, a general agent, even if his powers and duties were not reduced to writing, is competent to testify as to his authority. Reeves & Co. v. Bruening, 13 N.D. 157, 100 N.W. 241 (1904). Further, the testimony of any person who has requisite knowledge is admissible to prove the fact of agency. Remmick v. Mills, 165 N. W.2d 61 (N.D.1968). Despite the admissibility of this class of evidence, none was produced.

■ Next to be considered is the plaintiff's contention that the defendant's pleading in other legal proceedings admitted the truth of the plaintiff's claims in this action. Such conclusive effect cannot be accorded this class of evidence where, as here, the evidence shows only that such pleadings were signed by counsel and where as in this case those pleadings have been explained and contradicted. Power v. Williams, 53 N.D. 54, 205 N.W. 9 (1925); Union Nat. Bank of Minot v. Western Bldg. Co., 44 N.D. 336, 175 N.W. 628 (1919). See, Gallegher v. Haffner, 77 N. D. 570, 44 N.W.2d 491 (1950).

The evidence opposing the plaintiff's contention that it was the general agent for its subsidiaries, Mutual and Reserve, is formidable and considerably more persuasive. Robert Bryson, the agency director who organized Mutual's sales force, as earlier noted, referred repeatedly in his testimony to the various general agents serving Mutual without including the plaintiff in that listing. The State Insurance Commissioner's examination of Mutual's business operation, the report of which is dated March 21, 1961, and which was received in evidence without objection noted that:

> The Company (Mutual) operates on a general agency plan, the General Agents supervise the business for their designated area through special (direct writing) agents. General Agents are responsible for their own accounts and acts and for those of Special Agents under their respective supervision.

Even more significantly, the Insurance Commissioner's report continues to say:

> There are no agents (sic) contracts in writing in force and outstanding at this date. All agents are compensated on a commission basis and all appointments of agents are subject to Home Office approval. Currently there are six General Agents licensed and approximately one hundred seventy Special Agents, about ninety of which are active.

Whatever weight may be accorded the plaintiff's declarations in its several prospectuses that it had executed a management and agency contract with Mutual is lessened by its later contradictory prospectus statement that fees allegedly accruing under that contract were not to be considered Mutual's valid debts.

Further, the Stockmen's Prospectus (January 2, 1962) in projecting the futures of Mutual and Reserve set forth that if Reserve were to assume the mutual company contracts, the "agency and management contract . . . between Stockmen's . . . and . . . Mutual will be terminated." And it is an acknowledged fact of this case, that Reserve in fact did assume the mutual company's contracts.

■ A finding by a trial court, under Rule 52(a), N.D.R.Civ.P., presumptively is correct and will not be set aside unless "clearly erroneous." Conclusions of law, however, are fully reviewable on appeal. Whether a particular finding is a finding of fact or is a conclusion of law

will be determined by the reviewing court, and a designation by the trial court is not conclusive. Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972); Northwestern Bell Telephone Company v. The Board of Commissioners of the City of Fargo, 211 N.W.2d 399 (N.D.1973).

North Dakota adopted Rule 52(a) verbatim from the Federal Rules of Civil Procedure. Deeming the interpretation of that rule by the Federal courts as highly persuasive, this Court in In re Estate of Elmer, 210 N.W.2d 815 (N.D.1973) stated that it is not the function of the appellate court "to decide factual issues de novo" and approved the Federal definitive test that,

A finding is "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 346, 68 S. Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court.

Concluding that there was a failure of proof, this Court in Hofer v .W. M. Scott Livestock Company, 201 N.W.2d 410 (N.D. 1972) set aside the findings of the trial court.

■ Our examination of the evidence of this case demonstrates that there is little, if any, proof that Mutual ever appointed the plaintiff as its general agent, or that the plaintiff ever performed duties which properly could be ascribed to such a general agency, or that the plaintiff ever received such a general agent's commission as here demanded from either Mutual or Reserve. We are firmly convinced that the findings of the trial court that defendant Guarantee was to pay Stockmen's a 15% commission on all renewal income from all Mutual or Reserve poli-

cies assumed by Guarantee is without adequate evidentiary support, that the trial court was mistaken and erred in making such a finding and that this finding by the trial court was clearly erroneous and must be reversed.

There is substantial evidence in this case supporting the trial court's finding that the plaintiff was not entitled to a 10% management fee from Guarantee. Since this finding was not clearly erroneous, it is affirmed.

As earlier set forth, the plaintiff must prove, as a preliminary issue, its right to an accounting before the actual accounting will be undertaken. In this case, the plaintiff did not prevail in either of its causes of action, and it follows that the plaintiff is not entitled to an accounting, having failed to prove its right to this remedy.

■ The remaining questions raised by the specifications of error are not necessary to the decision in this case and need not be, and are not, considered. Inches v. Butcher, 104 N.W.2d 556 (N.D.1960); Heald v. Strong, 24 N.D. 120, 138 N.W. 1114 (1912).

■ In the course of this decision, the varying interpretations by the parties, as previously summarized, of paragraph 7 of the Contract of Reinsurance and Assumption were considered. In doing so, the usual rules governing construction of contracts were employed. Purely by way of comment, for what already has been said is decisive of this action, we are satisfied that the words of paragraph 7, "existing written contracts," have reference to written sales agency contracts and not insurance policies, and thereby Guarantee assumed only the obligation to pay individual sales commissions as required by written agency contracts. By the language of the paragraph in question, Guarantee first assumed Reserve's insurance policy liability, all of which necessarily was in writing. The remaining part of the paragraph was

exclusionary, limiting Guarantee's accepted and assumed liability, not to written insurance policies which had already been assumed, but to sales commissions provided for in existing written agency contracts. Since Reserve had no written contracts with its agents, Guarantee did not incur Reserve's obligation to pay its sales agents' renewal commissions.

The judgment of the District Court awarding the plaintiff a money judgment against the defendant, and decreeing an accounting is reversed. We do, however, affirm the order and judgment of the District Court in dismissing the plaintiff's cause of action that it was entitled to, and the defendant should pay, a management fee.

Affirmed in part and reversed in part.

ERICKSTAD, C. J., and KNUDSON, PAULSON and TEIGEN, JJ., concur.

STRUTZ, C. J. at the time this case was heard, deemed himself disqualified and DOUGLAS B. HEEN, District Judge of the Second Judicial District, sat in his stead.